J-S52021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| N.G.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| C.J.C. | |
| Appellant | No. 2 MDA 2017 |

Appeal from the Order Entered December 1, 2016
In the Court of Common Pleas of Centre County
Civil Division at No(s): CV 3670-2016

BEFORE:  GANTMAN, P.J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                **FILED AUGUST 07, 2017**

C.J.C. appeals from the final protection from abuse ("PFA") order,[1] entered against him in the Court of Common Pleas of Centre County, pursuant to 23 Pa.C.S.A. § 6102(a)(5).  After careful review, we affirm.

C.J.C. and N.G.C. were married in May 2013.  The couple lived together in Newport News, Virginia, where C.J.C. was stationed with the U.S. Marine Corps.  During their marriage, N.G.C. testified that C.J.C.'s actions "started out as emotionally abusive and then psychological and eventually it got physical."  N.T. PFA Hearing, 12/01/16, at 4.  N.G.C. claimed that C.J.C. had locked her in closets, used pressure points to hurt her, held her arms behind her back, told her he could kill her and make it look like an accident,

_____

[1] **See** 23 Pa.C.S.A. §§ 6101-6122 (Protection from Abuse Act ("PFAA")).

and took out a life insurance policy on her. *Id.* at 4-5, 9. C.J.C. denied every allegation of physical and psychological abuse.

There was an incident in May 2015, where N.G.C. testified that the couple fought and C.J.C. bit her, which resulted in C.J.C. being charged with assault and battery. At trial on these charges, N.G.C. claimed that she testified to not remembering the incident because C.J.C. threatened her and she was scared. C.J.C. claimed the couple merely had had an argument that night and denied threatening N.G.C. not to testify. N.G.C. filed a PFA complaint against C.J.C. in Virginia; however, after a hearing in August 2015, no order was entered against C.J.C.[2] In May 2016, C.J.C. had an extra-marital affair and asked N.G.C. to move out of the house. While making arrangements to move out, N.G.C. stayed in a separate bedroom and testified that one night C.J.C. came into the room and forced her to have sex with him.

In June 2016, N.G.C. left Virginia to return home to Chester County, Pennsylvania. On the day N.G.C. left, C.J.C. told her "he would get [her] back in the next ten years." *Id*. at 11-12. N.G.C. testified that for the month before she left, C.J.C. carried a handgun on him at all times, which scared her because of C.J.C.'s previous threats. Although the couple did not

---

[2] N.G.C. testified that the trial judge in Virginia did not grant the PFA order because there was already a military protective order in place preventing C.J.C. from contacting N.G.C., thus, there was no need for another one at that time.

see each other from the time N.G.C. left Virginia until the instant PFA hearing on December 1, 2016, N.G.C. claimed that when she first left, C.J.C. was calling her thirty times a day until N.G.C. blocked his phone number.

C.J.C. also remained in constant email communication with N.G.C., admitting to sending her "around a thousand or 2,000 emails." *Id*. at 43. N.G.C. testified that the emails were not threatening, but she felt threatened because C.J.C. was trying to figure out her location. C.J.C. claimed that his emails were about business, tax, and logistical issues related to property the couple owned together, and where he should send N.G.C.'s mail. N.G.C. testified that she told C.J.C. to send her mail to her grandmother's house but C.J.C. continued to ask for her address. N.G.C. did not want C.J.C. to know where she lived because of his previous threats and felt threatened by the emails because she believed C.J.C. was looking for her.[3]

N.G.C. filed a PFA petition against C.J.C. in the Centre County Court of Common Pleas on October 3, 2016. The court issued a temporary PFA order and scheduled a hearing for October 12, 2016. The hearing was continued until December 1, 2016, where the court ultimately entered a final PFA order

---

[3] N.G.C. has been living in State College, Pennsylvania. C.J.C. stated in an email that he was coming to State College, which scared N.G.C. because she never mentioned to him that she was living there. C.J.C. claimed he goes there "one or two times a year to look over" his grandfather's property. N.T. PFA Hearing, 12/1/16, at 45. However, N.G.C. claimed that the grandfather's property was thirty miles from State College.

against C.J.C. for a period of three years. On appeal, C.J.C. raises the following issue for our review:

> Whether the evidence presented at the hearing was sufficient to support an order of protection from abuse pursuant to the Pennsylvania [PFAA] where the court based its finding of abuse on a repeated course of email communication from [C.J.C.] to [N.G.C.] but [N.G.C.] failed to introduce evidence of any threatening emails or other communication which placed the plaintiff in reasonable fear of bodily injury?

Appellant's Brief, at 6.

"In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *Drew v. Drew*, 870 A.2d 377, 378 (Pa. Super. 2005) (quoting *Ferri v. Ferri*, 854 A.2d 600, 602 (Pa. Super. 2004)). The purpose of the PFAA is not to punish abusers for past violent behavior, but to advance the prevention of domestic violence from abusive perpetrators. *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1999). The petitioner has the burden of proving the allegations of abuse by a preponderance of the evidence under the PFAA. *See* 23 Pa.C.S. § 6107(a). When reviewing a claim that the evidence was insufficient to support a PFA order,

> we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence.

*Fonner*, 731 A.2d at 161 (quoting *Miller ex rel. Walker v. Walker*, 665 A.2d 1252, 1255 (Pa. Super. 1995)).

A "preponderance of the evidence standard is defined as the greater weight of the evidence, [i.e.], to tip a scale slightly is the criteria or requirement for preponderance of the evidence." **Raker v. Raker**, 847 A.2d 720, 724 (Pa. Super. 2004). Further, this Court defers to the trial court's credibility determinations of the witnesses, and if the findings of the trial court are supported by competent evidence, we are bound by them. **Coda v. Coda**, 666 A.2d 741, 743 (Pa. Super. 1995).

C.J.C. contends that N.G.C. failed to prove abuse by a preponderance of the evidence because the instant PFA order was based on N.G.C.'s allegations of *past* abuse and N.G.C. did not introduce evidence of any threatening emails or other communication that placed N.G.C. in reasonable fear of bodily injury. We disagree.

> Under the PFAA, abuse is defined as:
>
> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
>         *     *     *
>
>    (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. §6102(a)(5). Instantly, the trial court reasoned that our Court's holding in **Buchhalter v. Buchhalter**, 959 A.2d 1260 (Pa. Super. 2008), made N.G.C.'s allegations of past abuse "relevant to demonstrate [N.G.C.'s] state of mind and the manner in which she would receive any future threats." Trial Court Opinion, 02/13/17, at 2.

In **Buchhalter**, we concluded that past acts of violence are significant in determining the reasonableness of a PFA petitioner's fear. **Buchhalter**, 959 A.2d at 1264. The trial court, as fact finder, made a credibility determination as to N.G.C.'s testimony regarding C.J.C.'s alleged past abuse, and weighed the evidence accordingly. Although C.J.C. claims his thousands of non-threatening emails do not constitute a course of conduct that placed N.G.C. in reasonable fear of bodily injury, N.G.C. testified to past incidents of abuse, and C.J.C.'s threat of getting even with N.G.C. in the next ten years, which occurred just six months prior to the issuance of the instant PFA. **See Raker**, **supra** (petitioner proved imminent fear of serious bodily injury under section 6102(a)(2) where alleged abuser, who lived on other side of duplex, entered petitioner's side of duplex in middle of night and fought with son-in-law, and petitioner testified to various other incidents of violence that occurred only four months prior).

Moreover, N.G.C. testified that she is afraid to be alone with C.J.C. because of his previous threats and felt threatened by C.J.C.'s repeated emails because she feared he would find her location and go to her

apartment. Because this Court has held that "[i]t is possible for a person to be placed in reasonable fear of imminent bodily injury based on telephone calls, particularly when coupled with the alleged abuser's past history of violence," we likewise believe abuse can be established under section 6102(a) based on an abundance of emails accompanying past abusive behavior. ***Burke ex rel. Burke v. Bauman***, 814 A.2d 206, 209 (Pa. Super. 2002). ***See also T.K. v. A.Z.***, 157 A.3d 974 (Pa. Super. 2017) (affirming PFA order where sufficient evidence established appellant continually stalked and harassed petitioner, although petitioner did not use specific word of "fear" when she testified, because petitioner's testimony clearly indicated strong concern for her safety).

Viewing the evidence in the light most favorable to N.G.C., we find that the evidence was sufficient to sustain the trial court's decision by a preponderance of the evidence. ***Fonner***, ***supra***.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2017