J-S65035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARLOS OLIVO-VAZQUEZ | : | |
| | : | |
| Appellant | : | No. 1956 MDA 2017 |

Appeal from the Judgment of Sentence Entered November 1, 2017
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-16-01702

BEFORE:  SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED JANUARY 14, 2019**

Carlos Olivo-Vazquez appeals from the judgment of sentence of six months' incarceration plus costs, imposed on November 1, 2017, following his conviction for indirect criminal contempt of a final Protection From Abuse (PFA) order.[1]  We affirm.

The parties are familiar with the relevant facts and procedural history. In February 2016, L.C. obtained a temporary PFA order against Olivo-Vazquez on behalf of her minor daughter, T.C. Since that time, Olivo-Vazquez has been charged with violating its terms on multiple occasions. For example, in September 2016, the Commonwealth charged him with 75 counts of indirect criminal contempt; Olivo-Vazquez pleaded guilty to those charges; and the court thereafter sentenced him to 11½ months' incarceration followed by

_____

[1] 23 Pa.C.S.A. § 6114(a).

three years' probation. Concurrent with this judgment of sentence, the court imposed a sentence of one to two years' incarceration, less one day, followed by 4 years' probation for stalking, intimidation of a witness, and terroristic threats. ***See*** Trial Court Opinion, filed March 22, 2018, at 4. Also in September 2016, the court entered a final PFA against Olivo-Vazquez for a period of three years. PFA Order, 09/2/2016

In October 2017, the Commonwealth again charged Olivo-Vazquez with indirect criminal contempt, alleging that he had posted online T.C.'s name and home address and indicated his desire for someone to harm her. ***See*** Criminal Complaint, OTN No. T-985660-4, 10/26/2017. In November 2017, the court held a hearing, during which the Commonwealth introduced testimony from L.C., who authenticated a printout from a Facebook user profile identified as "Loose Screw." ***See*** Notes of Testimony (N.T.), 11/01/2017, at 6 (admitting Commonwealth's Exhibit No. 1 without objection). L.C. testified that "Loose Screw" was a pseudonym for Olivo-Vazquez. ***See id.*** at 6-9.

The printout included posts authored by the owner of the Facebook profile, *i.e.*, Olivo-Vazquez. The contents of these posts included an electronic scan of prior testimony by T.C., which referenced her prior relationship with Olivo-Vazquez, as well as the following statement:

> [Loose Screw:] Whoever know the bitch [T.C.] she a rat paperwork coming up soon and if she hit any of ya bitches up … its not me she krafty and know how to hack your shit … she live [T.C.'s address] She had me locked up for a whole year cause I ain't wanna be with her … somebody fuck this bitch up on mommy[.]

Commonwealth's Exhibit No. 1 (grammatical errors in original). In her testimony, L.C. affirmed the biographical details included in these posts. N.T. at 5, 7, 8.

Following the hearing, the court found Olivo-Vazquez guilty and sentenced him as noted above. He timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a responsive opinion.

In this appeal, Olivo-Vazquez challenges the sufficiency of the evidence against him. *See* Olivo-Vazquez's Br. at 4. Specifically, he asserts that the circumstantial evidence presented by the Commonwealth was insufficient to establish that he was the author of the "Loose Screw" Facebook posts. *Id.* at 8. Thus, Olivo-Vazquez concludes, we should vacate his judgment of sentence. *Id.* at 13.

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *Commonwealth v. Lambert*, 147 A.3d 1221, 1226 (Pa.Super. 2016) (quoting *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1261 (Pa.Super. 2008)); *see* 23 Pa.C.S.A. § 6102(a).

The Commonwealth may charge a person with indirect criminal contempt if he violates a PFA protective order outside the presence of the court. *See Commonwealth v. Brumbaugh*, 932 A.2d 108, 110 (Pa.Super. 2007); 23 Pa.C.S.A. § 6114. To establish indirect criminal contempt, the Commonwealth must establish: (1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited;

(2) the contemnor had notice of the order; (3) the act constituting the violation must have been volitional; and (4) the contemnor must have acted with wrongful intent. **Commonwealth v. Walsh**, 36 A.3d 613, 619 (Pa.Super.2012); **Brumbaugh** 932 A.2d at 110.

> Our standard of review is as follows:
>
> [W]hen reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, [the appellate court is] confined to a determination of whether the facts support the trial court decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion.

**Lambert**, 147 A.3d at 1226 (quoting **Commonwealth v. Kolansky**, 800 A.2d 937, 939 (Pa.Super.2002)) (internal citations omitted). Here, Olivo-Vazquez asserts the evidence was insufficient, which raises a question of law governed by the following principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the

credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Brumbaugh*** 932 A.2d at 109-10 (citation omitted).

In suggesting to this Court that he was not the author of the "Loose Screw" Facebook posts, Olivo-Vazquez essentially challenges the third and fourth elements of an indirect criminal contempt charge, *i.e.*, a volitional act committed with wrongful intent.[2] In so doing, Olivo-Vazquez suggests we reject L.C.'s testimony, arguing that he is not the only person that knows the victim's home address, pictures of him appearing on the "Loose Screw" profile page could have been uploaded by anyone, and a prior judgment of sentence imposed against him, referenced in the Facebook post, was publicly available information. Olivo-Vazquez's Br. at 10-12.

However, in evaluating the evidence, the trial court reasoned as follows:

[T]he testimony presented by [L.C.] … [was] credible in nature and supportive of the court's conclusion that there existed no viable explanation other than it was [Olivo-Vazquez] who authored the Facebook posts at issue. Stated another way, the testimony presented clearly established that recent photographs of [Olivo-Vazquez] were depicted on this Facebook page. In addition, the court looked to the context of the postings at issue. The author of these postings was an individual that possessed full knowledge regarding the minor victim, including: her name, her address, the fact that she resided with her mother, and details as to the nature of her [prior] romantic relationship with [Olivo-Vazquez]. In addition, the author of these postings referred to

_____

[2] Olivo-Vazquez conceded service of the order at the evidentiary hearing and has presented no argument to this Court regarding the clear and definite nature of the conduct prohibited. N.T. at 24; ***see*** Olivo-Vazquez's Pa.R.A.P. 1925(b) Statement, 01/23/2018; Trial Ct. Op. at 6; ***see generally*** Olivo-Vazquez's Br. at 7-13. Thus, we need not address these elements of the charge.

himself in the first person, was clearly angry with the minor victim, and had knowledge of the full details of the instant matter and related criminal prosecutions.

. . .

It is further noted that the content of the messages at issue clearly demonstrated [Olivo-Vazquez's] … intent in authoring such messages was to serve as an invitation and/or direction for someone to inflict physical violence upon the minor [v]ictim. … As such, [Olivo-Vazquez] was clearly engaging in threatening behavior that falls within a reasonable person's understanding of the prohibition against stalking, harassing, or threatening conduct against the protected party or parties included in the [f]inal [PFA] order. As such, for the reasons noted, this court has no doubt that the comments made by [Olivo-Vazquez] were volitional in nature and made with wrongful intent sufficient to sustain a conviction of [i]ndirect [c]riminal [c]ontempt.

Trial Ct. Op. at 7-8.

We agree. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, and based on the testimony of L.C., there was sufficient evidence for the trial court to conclude that Olivo-Vazquez had authored the Facebook posts threatening T.C. Moreover, with the Facebook posts, as authenticated by L.C., the Commonwealth presented sufficient evidence that Olivo-Vazquez violated the terms of the final PFA order and, thus, committed indirect criminal contempt.[3] Accordingly, we affirm the judgment of sentence.

---

[3] To the extent Olivo-Vazquez now seeks to challenge the *admissibility* of the Commonwealth's Exhibit No. 1, he has failed to properly preserve any challenge to the authenticity of this evidence. *See* Olivo-Vazquez's Br. at 9-11 (citing, *e.g.*, **Commonwealth v. Mangel**, 181 A.3d 1154 (Pa.Super. 2018); **Commonwealth v. Koch**, 39 A.3d 996 (Pa. Super. 2011)). It appears

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/14/2019

---

that Olivo-Vazquez has conflated the proper authentication of evidence, an issue addressing the admissibility of evidence, with its credibility or persuasive force, considerations implicating the weight of the evidence. These are distinct issues. Here, Olivo-Vazquez did not object when the Commonwealth moved for admission of Exhibit No. 1; thus, it became part of the evidentiary record. **See** N.T. at 9. Moreover, Olivo-Vazquez did not include an evidentiary challenge to Exhibit No. 1 in his Pa.R.A.P. 1925(b) statement. **See** Olivo-Vazquez's Pa.R.A.P. 1925(b) Statement. To be clear, Olivo-Vazquez has waived any challenge to the admissibility of the Commonwealth's Exhibit No. 1. **See** Pa.R.A.P. 302(a), 1925(b). Nevertheless, absent waiver, his arguments are without merit. The Commonwealth established the authenticity of the "Screw Loose" Facebook posts with detailed testimony from L.C. identifying Olivo-Vazquez as the author. **See** N.T. at 6-16; Trial Ct. Op. at 7-8. This circumstantial evidence "corroborate[d] the identity of the author of the communication[s] in question" and provided "contextual clues … tending to reveal [his] identity" **Mangel**, 181 A.3d at 1162.