**Patricia BUCHHALTER, Appellant**

v.

**Steven BUCHHALTER, Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 20, 2008.
Filed Oct. 27, 2008.

Ezra D. Church, Philadelphia, for appellant.

BEFORE: STEVENS, MUSMANNO and BENDER, JJ.

OPINION BY BENDER, J.:

¶ 1 Patricia Buchhalter appeals from the order entered on October 22, 2007, that vacated a temporary protection from abuse (PFA) order and dismissed her petition seeking a PFA order against her ex-husband, Steven Buchhalter.[1]  We vacate and remand.

¶ 2 Patricia filed a PFA petition on September 14, 2007, against Steven, and a temporary order was entered prohibiting Steven from contacting Patricia.  Both

---

1. Steven has not filed an appellee's brief with    this Court.

parties attended a hearing on October 22, 2007, with counsel. Based upon the testimony provided at the hearing, the trial court set forth the following recitation of the facts:

[Patricia] testified at the October 22, 2007, trial that on September [14], 2007, [Steven] told her "that he was going to track her down and beat the crap out of" her because she told him that the current custody order which was in place for the parties' two youngest children was not working. [Patricia] further testified that she did not remember whether she had called [Steven] or he had called her. [Patricia] testified that she believes [Steven] broke into her cell phone and listened to her messages in May 2007. [Patricia] also testified that she switched to a different phone company because she felt uncomfortable not knowing how [Steven] had gotten her messages. [Patricia] testified that in approximately May 2005, [Steven] was at their son's baseball game with his brother, his current wife, and his current wife's sister; their son was very upset and was crying while he was pitching, so she asked them to leave. She testified that their son was upset and crying because his father brought all these people to the game. [Patricia] testified that [Steven's] current wife's sister threw her into the fence, grabbed the back of her hair, pushed her face into the dirt, and told her she "need[s] to learn to keep her mouth shut." [Patricia] further testified that when she went back to the bleachers, [Steven] said "next time you'll learn to keep your mouth shut." [Patricia] also testified that after the incident [Steven] threatened that "he would get Jeanie to beat me up again."

On cross-examination, when presented with the petition she filed, [Patricia] testified that she did not recall if she had actually called [Steven]. [Patricia] denied telling [Steven] she wanted to terminate his parental rights. She testified that she told [Steven] that she thought they needed to make changes in the custody arrangements and that the Tuesday and Thursday visits were too much. [Patricia] again testified that in the middle of May 2007 [Steven] broke into her cell phone. [Patricia] claimed that the only way [Steven] could know of her plans to go to Atlantic City was by listening to her voicemail. When questioned about her son's cell phone breaking as a possible reason for switching phone carriers, [Patricia] testified that their son Steven's cell phone broke when he was swimming and forgot it was in his pocket. [Patricia] also testified that from 2005 to February 2006, she never called [Steven] on his cell phone and that they communicated via e-mail. Upon further questioning she then stated "I wouldn't call him repeatedly, no, I had no reason to."

The parties' son, Steven, testified that he was upset when he heard about the incident that occurred at the baseball field. He further testified that he wasn't upset before he heard about the incident, and that seeing his father and the other people in the stands did not upset him. He testified that it was toward the end of the game, when he heard what happened with his mom, that he became upset. Steven also testified that his cell phone broke when he dropped it and it hit the ground.

[Steven's] brother Brian testified that they were watching the game and "Patricia walked up from where she parked her car right to Steve and started yelling at him he needs to get out of here." Brian further testified that when he was over at the playground, he noticed Patricia and Jeanie were walking from the baseball field talking to each other arguing with each other from the baseball field over to the playground." He testi-

fied that he saw pushing from both sides before Patricia grabbed her purse, swung it, and hit Jeanie with it, then Jeannie started swinging back and both women were hitting each other. He testified that he then went over and broke up the fight by pulling Jeanie away.

[Steven] testified that he never asked anyone to do anything to [Patricia], that he did not ask Jeanie to fight with [Patricia], and that he did not see the altercation. He further testified that he never threatened to beat [Patricia] up or to get anyone to beat her up. [Steven] testified that on September 12, 2007, [Patricia] called him and was "screaming and yelling." He stated that [Patricia] told him that if he were to sign over all his rights to his children then he wouldn't have to pay for child support. [Steven] further denied ever breaking into [Patricia's] phone and listening to her messages. [Steven] testified that from January 2005 and throughout 2006, [Patricia] would call him anywhere from two times a day up to thirty or forty times a day.

[Steven's] wife, Jane, testified that she was present in the kitchen with [Steven] when [Patricia] called, and that she remained in the kitchen the entire time [Steven] was on the phone with [Patricia]. She testified that she did not hear [Steven] make any threats to [Patricia] and that she could hear some of what [Patricia] said because [Patricia] was "screaming."

At the conclusion of the trial, the Court made certain findings of fact and conclusions of law. The Court found that the testimony of [Steven] and his witnesses to be credible and that he did not threaten [Patricia] or break into her cell phone. The Court did not find [Patricia's] testimony to be credible and had concerns regarding the testimony of the parties' son.

Trial Court Opinion (T.C.O.), 1/28/08, at 2–4 (citations to N.T. and emphasis omitted). The court concluded that Steven had not made the threats as alleged by Patricia and, therefore, it entered the order dismissing Patricia's PFA petition.

¶ 3 Patricia filed a Notice of Appeal on November 20, 2007, and timely filed her concise statement of errors complained of on appeal in response to the court's order directing the filing of such a statement. Patricia raises a single issue for our review:

During a Protection from Abuse hearing, did the Trial Court err when it barred [Patricia] from testifying about the prior abuse committed by [Steven], where the testimony was offered to show why [Patricia's] fear of current threats by [Steven] was warranted and entitled [Patricia] to a Protection from Abuse Order?

Patricia's brief at 3.

¶ 4 "As an initial matter, we note that, in a PFA action, we review the trial court's legal conclusions for an error of law or an abuse of discretion." *Custer v. Cochran*, 933 A.2d 1050, 1053–54 (Pa.Super.2007) (*en banc*) (quoting *Lawrence v. Bordner*, 907 A.2d 1109, 1112 (Pa.Super.2006)). "The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *Id.* at 1054 (citing *Lawrence*, 907 A.2d at 1112). The PFA Act defines the term "abuse" in pertinent part as:

The occurrence of one or more of the following acts between family household members, sexual or intimate partners or persons who share biological parenthood:

. . . .

(2) Placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S. § 6102(a).

■ ¶ 5 The thrust of Patricia's argument is that the trial court erred as a matter of law in concluding that evidence of prior abuse that was the subject of a prior mutual consent order in which neither party admitted guilt, was not admissible in the present proceeding. In response to this argument, the trial court stated:

> "The admissibility of evidence is a matter addressed to the discretion of the trial court and may be reversed on appeal only upon a showing that the court abused its discretion." *Commonwealth v. Davis*, 737 A.2d 792, 796 (Pa.Super.1999); citing *Commonwealth v. Richter*, 551 Pa. 507, 512, 711 A.2d 464, 466 (1998). Evidence of prior bad acts is generally inadmissible; however, in PFA cases, past abuse may be admissible for the purpose of showing the petitioner's state of mind as to whether he or she has a reasonable fear of abuse by the respondent.....
>
> In this instance, the [c]ourt did not find [Patricia's] testimony that [Steven] threatened her or broke into her cell phone to be credible. Therefore, evidence of past abuse was not relevant and therefore inadmissible to show [Patricia] had a reasonable fear of [Steven].

T.C.O. at 5.

¶ 6 In its opinion, the trial court noted its recognition that the PFA Act provides that "any protection order granted may be considered in any subsequent proceedings." 23 Pa.C.S. § 6107(a). However, during the hearing, the court refused to allow Patricia to testify about past abuse that was subject to the prior consent order, and now explains in its opinion that it "could not consider the past abuse as a basis for a new PFA Order because [Patricia] had already obtained an Order in the

past. Absent a finding of a new instance of 'abuse,' this [c]ourt could not grant a new PFA Order." T.C.O. at 6–7. In essence, the trial court reasons that if Patricia is not believed as to the allegations in the present petition, then there is no need to hear testimony about prior abuse. We disagree.

■ ¶ 7 "In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury...." *Raker v. Raker*, 847 A.2d 720, 725 (Pa.Super.2004). The intent of the alleged abuser is of no moment. *Id.* In discussing the appellant's argument concerning incidents not contained in the petition and too remote in time, the *Raker* court stated:

> Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present. *Soda v. Baird*, 411 Pa.Super. 80, 600 A.2d 1274 (1991). In *Snyder v. Snyder*, [427 Pa.Super. 494, 629 A.2d 977 (1993)], *supra*, the court held that a person filing a protection from abuse petition will not be "rigorously limited to the specific allegation of abuse found in the Petition." 427 Pa.Super. at 502, 629 A.2d at 981. The court further held that in light of the purpose of the Act to "prevent imminent harm to abused person(s)," some flexibility must be allowed in the admission of evidence relating to past acts of abuse. *Id.* at 503–04, 629 A.2d at 982.

*Miller v. Walker*, 445 Pa.Super. 537, 665 A.2d 1252 at 1259. Moreover, the *Miller* court held that it was not an abuse of discretion for the court to consider evidence of abuse that occurred six years earlier. The court reasoned that:

In light of the protective purposes of the act, it was within the trial court's discretion to hear any relevant evidence that would assist it in its obligation to assess the appellee's entitlement to and need for a protection from abuse order. If the trial court found the testimony to involve events too distant in time to possess great relevance to the case, it could certainly have assigned less weight to the testimony. However, it was not an abuse of discretion for the trial court to hear the evidence. Past abusive conduct on the appellant's part was a crucial inquiry necessary for entry of a proper order.

*Raker,* 847 A.2d at 726. *See Custer,* 933 A.2d at 1059 n. 11 (relying on *Raker* and stating that "[i]t is proper for a trial court to admit evidence of prior abusive acts not raised in the PFA petition").

¶ 8 While we recognize that the court as the finder of fact is entitled to weigh evidence and assess credibility, it was the court's duty to determine whether Patricia was in reasonable fear of imminent serious bodily injury. The facts surrounding the prior PFA consent order are relevant to an understanding as to the reasonableness of Patricia's fear relative to the present petition. Moreover, merely determining that a party is not credible is not a basis in itself to exclude relevant testimony. We therefore conclude that the trial court by refusing to allow testimony regarding the prior PFA consent order erred as a matter of law. Obviously, allowing Patricia to testify about prior alleged abuse, also invites Steven to counter her testimony with his own recollections about the prior alleged abuse. Thereafter, the court is in a position to determine credibility and weight and properly determine the reasonableness of Patricia's alleged fear and whether she proved by a preponderance of the evidence that the present alleged incidents rose to the level of abuse as defined by the PFA Act. Accordingly, we vacate the order dismissing the PFA petition and remand for an additional hearing. Our decision to do so in no way suggests a particular outcome.

¶ 9 Order vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.