J-A25006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| Rhonda Moore | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| Thomas Moore | : | |
| | : | |
| Appellant | : | No. 559 MDA 2020 |

Appeal from the Order Entered February 27, 2020
In the Court of Common Pleas of Mifflin County Civil Division at No(s):
CP-44-CV-1564-2019

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:　　　　　　　　　　　**FILED MARCH 10, 2021**

Thomas Moore appeals from the February 27, 2020 protection from abuse ("PFA") order, prohibiting contact with Rhonda Moore, his ex-wife, for three years.  We affirm.

The trial court summarized the pertinent facts as follows:

> This case arises out of two incidents between [Thomas Moore] and [Rhonda Moore].  The first incident occurred sometime before Thanksgiving in 2019 (neither party was certain about the date), over a car.  [Rhonda] and [Thomas] owned two cars, one of which was highly unreliable.  [Thomas] had an appointment in State College, Pennsylvania, and asked [Rhonda] to return the reliable car before his appointment so that he would not breakdown over the mountain.  When [Rhonda] lost track of time, [Thomas] was forced to take the unreliable car.  [Thomas] asked [Rhonda] to keep her cellphone on her in case of an emergency. Sometime later, [Thomas] attempted to call [Rhonda] a few times without answer.  On the third time he called, [Rhonda] picked up her phone as she was pulling into their driveway.  When [Rhonda] came out [Thomas] told her that he had been stuck on the mountain for hours and asked why she hadn't kept her phone on her.  [Thomas], in fact, had never gotten stuck on the mountain,

but thought he might joke with her. This upset [Rhonda] who stormed inside their home, as [Thomas] followed her in. [Thomas] then asked what she would like for dinner, as [Rhonda] stated she would only be cooking for herself and began slamming kitchenware around. That is when [Thomas] began pounding his fist on the table and yelling at [Rhonda] that she is disrespectful. [Thomas] continued to yell as [Rhonda] left the room, when [Thomas] began to follow her yelling about her being disrespectful, treating him like he's nothing, and that [Rhonda] is full of herself. This incident lasted a few minutes, afterwards, [Rhonda] slept in a separate room from [Thomas].

The second incident which was the reason for the Emergency PFA arose from [Thomas] coming to [Rhonda's] office during the workday. However, due to the unreliable car, [Thomas] and [Rhonda] needed to once again switch cars for the day. [Rhonda] had told [Thomas] to park the unreliable car in the parking lot and then take the other car, as both had sets of keys. She instructed [Thomas] not to come inside her office. However, upon arrival [Thomas] parked the car and walked into [Rhonda's] office. When he entered, he heard [Rhonda] speaking negatively about their private arguments to her coworkers. [Thomas] then asked [Rhonda] if she was once again airing their dirty laundry. Communication quickly broke down and a verbal altercation began between [Thomas] and a co-worker at [Rhonda's] office. [Rhonda] continued to ask him to leave, while the co-worker and [Thomas] were yelling obscenities at one another. After the co-worker refused to back down, [Thomas] told [Rhonda] he wouldn't be leaving until [Rhonda] came with him. [Rhonda] refused, and [Thomas] promptly left.

Trial Court Opinion, 2/26/20, at unnumbered 1-3.

On December 10, 2019, Rhonda filed an emergency PFA petition. A hearing was held on February 18, 2020. Rhonda testified that Thomas suffers from PTSD, that his outbursts have been increasing in frequency and intensity, that he owns multiple firearms, and that he often tells her that he wants to kill himself. She explained that while Thomas has not yet physically assaulted her, his refusal to respect her boundaries and the unpredictability and

increasing frequency of his outbursts has caused her to fear for her safety. Rhonda's licensed professional counselor, Shelly Krohn, also testified to the deep emotional impact Thomas's unpredictable behavior has had on Rhonda. She described Rhonda's increased anxiety, which had restricted her ability to sleep and made her hypervigilant, since she was fearful of the unknown behavior that Thomas may show at any given moment.

Thomas testified, describing a similar cycle of relationship highs and lows, but characterized the individual incidents as small marital arguments rather than increasingly serious causes for concern. While he did suffer from PTSD, had broken objects out of anger in Rhonda's presence, and had repeatedly ignored Rhonda's requests to stay away from her workplace, he explained that she could not be in reasonable fear of him because he had never physically assaulted her, threatened to harm her, or intended to harm her. Instead, Thomas posited that the temporary PFA paperwork was filed as a result of workplace peer pressure and Rhonda's disappointment with the alimony award at their spousal support conference. In support of his position, he described text messages in which Rhonda had asked him on a date, offered him new keys to the marital residence, and given him a hug when she encountered him on the street.

At the conclusion of the hearing, the trial court took the matter under advisement. On February 26, 2020, the trial court entered an order granting a final PFA for a period of three years. While the court found Rhonda's continued contact with Thomas concerning, it ultimately credited Rhonda's

subjective fear and associated PTSD diagnosis by Dr. Krohn over Thomas's testimony. This timely appeal followed. Both Thomas and the trial court complied with the mandates of Pa.R.A.P. 1925.

Thomas raises the following issue for our review:

Did the trial court abuse its discretion and/or commit an error of law in finding that [Rhonda] sustained her burden to prove by a preponderance of the evidence that [Thomas] committed an act of "abuse" as defined in 23 Pa.C.S. § 6102 justifying the entry of a final protection from abuse order?

Appellant's brief at 5.

We conduct our review of Thomas's claim according to the following standard:

In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence. A preponderance of the evidence standard is defined as the greater weight of the evidence, i.e., [enough] to tip a scale slightly.

When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

*E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa.Super. 2020).

The PFA act defines abuse as "[k]nowingly engaging in a course of conduct or repeatedly committing acts toward another person, including

- 4 -

following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury." 23 Pa.C.S. § 6102(a)(5). Accordingly, the trial court's objective is to determine whether the victim's fear is reasonable. **Raker v. Raker**, 847 A.2d 720, 725 (Pa. Super. 2004). This is an objective test. **B.D.K. v. T.D.K.**, 240 A.3d 995, 995 (Pa.Super. 2020) (affirming entry of a final PFA after the trial court correctly applied an objective standard when assessing whether plaintiff was in reasonable fear of bodily injury). Accordingly, the perpetrator's intent "is of no moment." **Raker**, **supra** at 725. Since the primary goal of the Act is to prevent physical and sexual abuse, a victim does not have to wait for physical or sexual abuse to occur in order for the Act to apply. **Buchhalter v. Buchhalter**, 959 A.2d 1260, 1264 (Pa.Super. 2008). Moreover, we note that "[c]redibility of the witnesses and the weight accorded their testimony is within the exclusive province of the judge as fact finder." **Mescanti v. Mescanti**, 956 A.2d 1017, 1019-20 (Pa.Super. 2008).

Thomas alleges that the evidence in support of the final PFA order was insufficient because his conduct was *de minimus* and Rhonda's continued contact with him after the entry of the temporary PFA shows that she could not have been in reasonable fear of bodily injury. **See** Appellant's brief at 17-18. Stated differently, Thomas alleges that the trial court erred by relying on subjective factors in determining whether Rhonda's fear of bodily injury was

- 5 -

reasonable. However, our review of the record reveals that Thomas is not entitled to any relief on his claim.

The trial court's issuance of a final PFA order against Thomas was based on its determination that Thomas engaged in a course of conduct, which placed Rhonda in reasonable fear of bodily injury based on its assessment of all of the testimony. *See* Trial Court Opinion, 2/26/20, at unnumbered 7. In support of its findings, the trial court issued the following statement:

> [T]he determination made by the expert, Shelly Krohn, was determinative of [Rhonda's] reasonable fear.
>
> Shelly Krohn, [Rhonda's] counselor testified that she has had eighteen sessions with [Rhonda] by February 18, 2020. She testified that during the first session she diagnosed [Rhonda] with [PTSD] from incidents involving [Thomas]. During these sessions, [Rhonda] divulged that the outbursts by [Thomas] caused her great stress. Additionally, [Rhonda] told Shelly Krohn that [Thomas]'s statements about killing himself, and asking her to lock up is guns made her fearful of what he could do to either himself or her. Shelly Krohn stated that she advised [Rhonda] to get a PFA as early as July and that the effects of these emotional outbursts have caused [Rhonda] trouble eating and sleeping.
>
> The Court finds it concerning, however, that [Rhonda] has continued to contact [Thomas]. [Thomas] argues that this clearly shows that [Rhonda] is not in fear if she is inviting him out on dates, offering him keys to the house, and telling [Thomas] on multiple occasions that there is chance at reconciliation. However, with no controlling case law on victim communication to a defendant after the entry of an Emergency PFA, the Court must accept [Rhonda's] subjective fear and associated diagnosis by expert Shelly Krohn, irrespective of [Thomas]'s intent. Additionally, counsel for [Rhonda] argued that the cycle of abuse leads to a cycle of reconciliation with the other party before the finality of the relationship is recognized, and that cycle of reconciliation does not reduce the reasonableness of [Rhonda's] fear. Due to the testimony of continued fear and the emotional and physical effects [Appellee's] behavior has had on [Rhonda],

the Court finds that by the preponderance of the evidence [Rhonda] has met her burden for the entry of a Final PFA.

*Id*. at unnumbered 7-8.

As the above excerpt reveals, the trial court relied on both subjective and objective facts in finding that Rhonda's fear was reasonable. At the PFA hearing, Thomas conceded that he suffers from PTSD, has repeatedly told Rhonda that he felt suicidal, has broken things in her presence, and that they have had to take proactive steps to lock up his guns. N.T. PFA Hearing, 2/18/21, at 188-90. Thomas also acknowledged that he has completely disregarded Rhonda's boundaries, such as her request that he not come to her workplace. *Id*. at 191. Additionally, Shelly Krohn testified that she diagnosed Rhonda with PTSD and encouraged her to seek a PFA against Thomas, based on Rhonda's self-reporting, but also on her own observations of Rhonda's behavior after meeting with her eighteen times. *See* N.T. PFA hearing, 2/10/20, at 117. Although Rhonda had contacted Thomas a few times since the entry of the emergency PFA, the court was persuaded by counsel's explanation that re-initiating contact with an abuser was not uncommon in domestic violence situations, that Thomas's behavior had been escalating, and that while Thomas had not physically harmed her yet, his behavior was trending in that direction. *See* N.T. PFA Hearing, 2/18/21 at 224-26; *see also Buchhalter*, *supra* at 1264 (finding that a victim does not have to wait for physical abuse to occur in order for the PFA Act to apply).

Based on the foregoing, we conclude that the trial court applied the appropriate standard in finding that Rhonda's fear was reasonable, and we discern no abuse of discretion. Accordingly, we affirm the trial court's order granting a final PFA order in favor of Rhonda.[1]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/10/2021

---

[1] To the extent that Appellant attempts to attack the credibility of Rhonda's testimony, we observe that the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder. *See Mescanti v. Mescanti*, 956 A.2d 1017, 1020 (Pa. Super. 2008). In reviewing the validity of a PFA order, this Court must view the evidence in the light most favorable to the petitioner, granting her the benefit of all reasonable inferences. *See S.W. v. S.F.*, 196 A.3d 224, 228 (Pa.Super. 2018) (citation omitted). The trial court credited Rhonda and her therapist's testimony that Thomas's behavior had placed her in reasonable fear, especially in light of her knowledge of Thomas's psychiatric background. To conclude otherwise would require us to reweigh the evidence. This is something that we cannot do. *See Ferko-Fox v. Fox*, 68 A.3d 917, 928 (Pa.Super. 2013) ("This court must defer to the trial court's determinations regarding the credibility of witnesses at the hearing.").