J-A07031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PATRICIA O. MUTZECK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALISON M. AYERS | : | |
| | : | |
| Appellant | : | No. 1232 MDA 2020 |

Appeal from the Order Entered August 31, 2020
In the Court of Common Pleas of Centre County Civil Division at No(s):
20-1816

BEFORE:   BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED APRIL 27, 2021**

Appellant Alison M. Ayers appeals from the Final Order entered on August 31, 2020, in the Court of Common Pleas of Centre County under the Protection from Abuse Act (PFA) Act[1] in favor of Appellee Patricia O. Mutzeck. Following our review, we affirm.

On July 27, 2020, Appellee, who is Appellant's 74-year-old mother, filed a PFA petition, and a temporary PFA Order was entered on that date. On August 5, 2020, Appellant filed a PFA petition against John Mutzeck, Appellee's husband and Appellant's 87-year-old stepfather.[2]

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 23 Pa.C.S.A. §§ 6101-6122.

A PFA hearing on both PCRA petitions was scheduled for August 27, 2020, at which time the parties were represented by counsel and testified. Mr. Mutzeck, and the Mutzecks' neighbor, Susan Weiss, also testified. At the conclusion of the hearing, the trial court placed its findings of fact on the record, and it entered the final PFA Order which is the subject of this appeal.

The trial court summarized the facts it had determined to be pertinent when entering its Final Order as follows:[3]

> [Appellee] testified that she is 74 years of age, and is the mother of [Appellant], 46 years old. On July 25, 2020, [Appellee] transported her daughter to a medical appointment. [Appellant] believed she experienced sexism from her medical provider and when her mother did not completely agree about the circumstances, [Appellant] became angry and enraged in the vehicle. A couple of days later, [Appellant] telephoned her mother and asked her to transport her to another upcoming medical appointment. [Appellee] indicated that she could not provide transportation for the appointment. Later that same day, [Appellant] went to [Appellee's] house to confront her. As Mr. Mutzeck (87 years old) was carrying his shopping bags toward the door, [Appellant] told him that she wanted to see her mother. Mr. Mutzeck told [Appellant] that she could not go inside and that her mother was resting.
>     When Mr. Mutzeck would not allow [Appellant] to enter the home, [Appellant] would not take no for an answer and "muscled her way into the home." (Tr. 8/27/20 at 26). [Appellant] grabbed Mr. Mutzeck's phone when he stated he would call the police. Ms. Weiss heard the commotion and noted that Mr. Mutzeck appeared to be unsteady on his feet during the encounter with [Appellant].

---

[2] The trial court dismissed this petition on August 27, 2020. In addition, on August 17, 2020, Appellant filed a petition against both Appellee and Mr. Mutzeck requesting the return of certain personal property. These matters are not a part of the appeal before us herein. **See** Appellant's Brief at 5.

[3] Appellant does not dispute the trial court's statement of facts and relies upon them in her brief. Appellant's Brief at 7-10.

Mr. Mutzeck called 911 and [Appellant] also called 911 stating that she had been assaulted by Mr. Mutzeck. Photos of bruises on Mr. Mutzeck's arm following that incident with [Appellant] were admitted into evidence at [Appellee's] Exhibit 1. Mr. Mutzeck's physician sent him for an x-ray for shoulder pain after the incident with [Appellant]. [Appellee] testified that she had locked the door in anticipation of [Appellant] coming over because [Appellant] was so angry. [Appellee] further testified that [Appellant] was "coming for her" when she was insisting on entering her home despite being told not to. (Tr. at 26).

Additionally, [Appellee] testified to multiple other incidents with [Appellant] when she became angry in [Appellee's] home, vehicle, and in other locations. On one occasion, [Appellant] appeared at [Appellee's] home unannounced and told her mother that she was not to see the counselor they had both been seeing because [Appellant] fired the counselor. [Appellee] stated that [Appellant] was aggressive, intimidating, and berated her. The following day, [Appellant] arrived at 7:30 a.m. and [Appellee] would not let [Appellant] in her home. [Appellant] screamed at the door at the top of her lungs. On another occasion, [Appellee]was fearful because she was driving [Appellant] for a medical appointment and [Appellant] became angry and threatened to jump out of the moving vehicle.

[Appellee] testified to the [c]ourt that she is fearful of [Appellant]. The evidence revealed the relationship between the parties has been strained for years. [Appellee] testified that she cannot deny [Appellant's] requests or express any contrary opinion without receiving an angry response from [Appellant]. [Appellant] made it clear that she has various health issues and [Appellee] testified that [Appellant's] appointments and health issues have been one source of strain in the relationship. [Appellant] expects her mother to provide transportation and blames her mother for her health conditions and elevated blood pressure when [Appellee] does not comply with her requests and opinions. As a result of the ongoing issues and the particular circumstances including but not limited to, [Appellee's] age, [Appellee] is reasonably fearful of [Appellant].

Trial Court Opinion, filed 11/9/20, at 1-3.

At the conclusion of the August 27, 2020, hearing, after making findings on the record that Appellee had met her burden under Section 6102 of the

PFA Act to show she was in fear of imminent serious bodily injury, the trial court granted Appellee's request for relief and entered a final PFA order which is to remain in effect for three years. Appellant timely filed a notice of appeal on September 24, 2020.

On October 5, 2020, the trial court directed Appellant to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied on October 9, 2020, at which time she raised the following, single issue: "Did [Appellee] prove, by a preponderance of the evidence, that she suffered "abuse" within the definition of 23 Pa.C.S.A. § 6102."

In her appellate brief, Appellant presents the following question for this Court's review:

> 1. Did [Appellee] prove by a preponderance of the evidence, that she suffered "abuse" within the definition of 23 Pa.C.S.A. § 6102. More specifically, did [Appellee] prove by a preponderance of the evidence, that she was in reasonable fear of death, or serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ?

Appellant's Brief at 4.

This Court's standard of review of PFA orders is well settled: "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa.Super. 2020) (internal citation and quotation marks omitted). In addition:

> The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, with the framework of the law, and is not exercised for the purpose of

- 4 -

giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Mescanti v. Mescanti*, 956 A.2d 1017, 1019 (Pa.Super. 2008) (quoting

*Custer v. Cochran*, 933 A.2d 1050, 1053-54 (Pa.Super. 2007) (*en banc*)).

Appellant stresses the PFA Act does not specifically define the term "serious bodily injury." Therefore, Appellant argues that pursuant to Subsection 6102(b) of the PFA Act[4] serious bodily injury should have the meaning set forth in 18 Pa.C.S.A. § 2301.[5] Appellant's Brief at 15 (quoting 23 Pa.C.S.A. 6102(b)).

Appellant states that viewed in a light most favorable to Appellee, the evidence is insufficient to support the trial court's finding that a PFA against Appellant is warranted. Appellant reasons that "[w]hile the daughter's behavior towards her Mother is certainly rude and ill-mannered, it could not be reasonably be [sic] said to place the Mother in fear of serious, permanent disfigurement or protracted loss or impairment of the function of any bodily

---

[4] Stating: "**(b) Other terms.--**Terms not otherwise defined in this chapter shall have the meaning given to them in 18 Pa.C.S. (relating to crimes and offenses)." 23 Pa.C.S.A. § 6102.

[5] 18 Pa.C.S.A. § 2301, defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

member or organ." Appellant's Brief at 16. Appellant posits this is evident from the fact Appellee testified to nothing more than that Appellant can become "angry" with her and that she is "fearful" of her daughter. Appellant also stresses she at no time specifically threatened to "kill" Appellee or cause her "serious, permanent disfigurement or protracted loss of the function of any bodily member or organ as is required by the statute." *Id*. at 18.

This Court previously has stated:

> The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence." ***K.B. v. Tinsley***, 208 A.3d 123, 128 (Pa. Super. 2019) (citation and brackets omitted). A "preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, [enough] to tip a scale slightly." ***Raker v. Raker***, 847 A.2d 720, 724 (Pa. Super. 2004).
>
> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it. ***K.B.***, 208 A.3d at 128.
>
> In relevant part, the PFA Act defines abuse as the "occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood: ... (2) Placing another in reasonable fear of imminent serious bodily injury." 23 Pa.C.S. § 6102(a)(2).
>
> **The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse**." ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1262 (Pa. Super. 2008). "**In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury**...." ***Raker***, 847 A.2d at 725. **Past acts are significant in**

> **determining the reasonableness of a PFA petitioner's fear**.
> **K.B.**, 208 A.3d at 128.

**E.K. v. J.R.A.**, 237 A.3d 509, 519 (Pa.Super. 2020) (emphasis added).

Herein, Appellant's arguments to the contrary, Appellee did not need to show that Appellant intended to kill or permanently disfigure her on July 25, 2020, to meet the requirements of the PFA Act. Moreover, the testimony at the PFA hearing established that Appellant's behavior toward Appellee on that day was more than merely "rude" and "ill-mannered." Specifically, Appellee characterized Appellant's behavior leading up to July 25, 2020, incident as follows:

> Well, I guess I would need to say that the preceding week was very, very stressful and difficult for me with [Appellant]. I had taken her to Lewistown for a follow-up doctor's appointment on a kidney stone removal that I thought went very well. The next day, she was scheduled to see locally a physician assistant. She became very upset with the way things went with the doctor in Lewistown. The morning – the next morning when I was going to pick her up to take her to the local appointment, she said we need to talk, I could see she was agitated, she was very irate about the treatment she felt she received in Lewistown where she felt she was discriminated against and experienced sexism. And I said, well, I don't really agree with that, I thought everything went very well. She became angry at me, said I need to agree with her, you're making my blood pressure go up, and now I'm going to have a bad appointment at Scenery Park. But I got her there, she had her appointment, and afterwards, she wanted to make a stop at Goodwill, she enjoys going there, I waited in the car, I don't go into places during these COVID days unless I need to; when she came out, she became enraged, it just kept seething in her about how things went with the doctor and previous doctors, she didn't believe the diagnosis, she was also angry at me because I didn't seem to agree.
>
> It's very hard to recreate the intensity of that, but I was in my car with her, I had to get her settled down, it was traumatizing, I will say, it's not the first time I've had this rageful experience

with her, so I did manage to get her home, I got in the house and I did reveal to my husband that I was extremely upset, I think I used the term shell-shocked and I just needed to recover.

So on the 25th, which was a couple days later, she called to tell me she made a last-minute appointment with a local Geisinger Saturday morning walk-in clinic, I said I am unable, I cannot get in the car with you, I am trying to recover from previous days, and I want to restore my strength to help you with appointments next week. I was on the phone with her for almost an hour and I thought I registered my feelings with her.

In the meantime, my husband, John, had gone out on an errand, I didn't realize that, I was on the phone, so I said goodbye to her, and I got a premonition, I thought she probably won't take no for an answer, she might come around the house, so I locked the doors. And pretty soon, she went around the corner, I saw her out the window, going to the back; at that moment, John was arriving home from his errands with two shopping bags, she intercepted him and said I need to see [Appellee], I need her help to get to the doctor. And he said [Appellee] is resting, I won't disturb her, he knew how I was feeling.

She followed him to the door since I had locked it and I was looking at them through the dining room window, he was trying to get his key out, and he said, [Appellant], you need to go or I will have to call the police. He got out his phone, she started to try and get that from him, it's a flip phone, she slammed it on his hand, he's struggling to open the door and she muscled her way in, it was a struggle that I could observe from the stoop.

And we struggled -- or she -- the two of them struggled throughout a room. He finally got away enough to call the police, call 911. [Appellant] also called, claiming she was being assaulted. The police did arrive and mitigated the situation and she left. And one of the officers at that time said to me, it might be time for a PFA because this was the second time in recent months that we had to call the police to come help us with her, so it ended and we just tried to decompress from the day and mull that over.

The next day, in the morning, I said to John, how is your hand, because he said she has quite a grip, he said it's okay, but I do have some bruises. I said, oh, let me see, and I was appalled, so I took pictures and that was when I knew I have to file a PFA, I cannot ignore this, I cannot continue with this, and so that was July 25th.

N.T. Hearing, 8/27/20, at 8-11.

At the conclusion of testimony, the trial court noted that Appellant's recent behavior in both January and March of 2020 had risen to a level which required Appellee to call the police and necessitated officer interaction. *Id*. at 65. In fact, a police officer asked Appellee if she wanted to press criminal charges against Appellant following the March 2020 incident. *Id*.

The court also observed that Appellant had endured years of emotional abuse and "volatile" and "berating" behavior from Appellant and would comply with Appellant's wishes out of fear of the consequences if she were to refuse. Indeed, Appellee's refusal to do what Appellant had asked of her led to Appellant's forcing herself into the Mutzecks' home on July 25, 2020, and injuring Mr. Mutzeck. *Id*. at 65-66. The trial court found it particularly relevant that the July 25, 2020, incident occurred at Appellee's own home, where Appellant was uninvited. *Id*. at 66. The court concluded as follows:

> . . . But [Appellant] got her way into the house and wasn't permitted to be there, basically forced herself into the house.
>
> So if we're talking about a PFA finding, obviously [Appellee] has testified that she's afraid of what would happen if she didn't yield to [Appellee], and that incident shows what would happen. Although [Appellee] wasn't personally injured there, she saw her husband injured and she saw [Appellant] go into the house without permission. The [c]ourt finds that through that testimony, there has been enough established that the [c]ourt will issue a PFA in favor of [Appellee] against [Appellant].

*Id*. at 66-67.

The aforementioned findings belie Appellant's position that the trial court relied upon her behavior during her teenage years when entering its PFA

Order.  To the contrary, as the finder of fact, the trial court was free to believe Appellee's testimony that she was in fear of imminent bodily injury at the hands of Appellant on July 25, 2020.  Her testimony, in conjunction with that of other Commonwealth witnesses, was sufficient to support the trial court's determination that she satisfied her burden of proof by a preponderance of the evidence as is required by the PFA Act.  **_See Raker_** at 726.  Finding no error of law or abuse of discretion, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/27/2021