J-A01026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| HANANE HAMOUMI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ABDELKHABIR CHAFII | : | No. 1366 EDA 2024 |

Appeal from the Order Entered April 18, 2024
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  2304V7097

BEFORE:  DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.:                    **FILED JUNE 9, 2025**

Appellant, Hanane Hamoumi ("Wife"), appeals from the order entered in the Philadelphia County Court of Common Pleas, under the Protection from Abuse ("PFA") Act,[1] in favor of Appellee, Abdelkhabir Chafii ("Husband").  We affirm.

The relevant facts and procedural history of this case are as follows. Wife and Husband married in 2005, and they have three children.  On April 10, 2023, Wife filed a *pro se* PFA petition against Husband.  In it, Wife claimed Husband was physically and verbally abusive.[2]  Wife also alleged that Husband

_____

[1] 23 Pa.C.S.A. §§ 6101-6122.

[2] Portions of the PFA petition were translated into Arabic.  At the subsequent PFA hearings, the parties utilized translators to interpret Arabic into English and English into Arabic.

threatened to stab her with a knife during a particularly intense argument. Based upon Wife's allegations, the court issued a temporary PFA order and scheduled a hearing on the matter.

On May 24, 2023, the court conducted the PFA hearing, and both parties appeared *pro se*. At that time, Wife testified about numerous instances of physical and verbal abuse. For example, Wife testified that Husband threatened her with a knife in April 2023. (**See** N.T. PFA Hearing, 5/24/23, at 11-12). Wife also claimed that Husband punched her while she was pregnant in 2010. (***Id.*** at 9). The punch landed on Wife's ear, and Wife presented medical records indicating that she suffered a ruptured eardrum. (**See** Wife's Exhibit P-2, submitted 5/24/23).

Husband testified in his own defense and denied Wife's assertions. (**See** N.T. PFA Hearing, 5/24/23, at 18-23). In addition to his testimony, Husband submitted evidence demonstrating that Wife withdrew $3,967.00 from the parties' bank account on April 17, 2023. (**See** Husband's Exhibit R-1, submitted 5/24/23). Husband testified that Wife moved out of their residence around the time of the withdrawal, and the lack of funds in the bank account left Husband unable to pay bills or provide for the children. (**See** N.T. PFA Hearing, 5/24/23, at 22). Following the hearing, the court vacated the temporary PFA order and dismissed the matter without prejudice. Wife did not file a notice of appeal.

On April 10, 2024, Wife filed a second, counseled PFA petition. In it,

Wife again alleged that Husband was physically and verbally abusive. Wife reiterated her claims about Husband threatening to stab her and Husband rupturing her eardrum. That same day, the court issued a temporary PFA order and scheduled another hearing on the matter.

On April 18, 2024, the court conducted a second PFA hearing. Wife appeared with counsel, and Husband proceeded *pro se*. Wife provided testimony that was consistent with her testimony from the prior PFA hearing. Additionally, although Wife had moved out of the parties' residence, she claimed that Husband stalked her at her new home and her place of employment. (*See* N.T. PFA Hearing, 4/18/24, at 21-23). In addition to her testimony, Wife submitted a video of Husband standing outside her workplace in November 2023. (*See* Wife's Exhibit P-3, submitted 4/18/24). Following Wife's testimony, Husband repeated his denials of Wife's claims. At the conclusion of the hearing, the court vacated the temporary PFA order and denied further relief.

Wife timely filed a notice of appeal on May 14, 2024. On May 15, 2024, the court ordered Wife to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Wife timely filed her Rule 1925(b) statement on May 31, 2024.

On appeal, Wife now raises two issues for this Court's review:

> Whether the trial court erred in considering [Husband's] intent in deciding whether [Wife] was in reasonable fear of bodily injury?

> Whether the evidence was sufficient to establish [Husband] abused [Wife] under 23 Pa.C.S. § 6102(a)(5)?

(Wife's Brief at 4).

In her issues combined, Wife complains that the court incorrectly required her to prove that Husband "was aware that it was practically certain his actions would cause [Wife] to be in reasonable fear of bodily injury." (*Id.* at 14) (quoting Trial Court Opinion, filed 7/16/24, at 4-5). Wife maintains that a "court's objective is to determine whether the victim is in reasonable fear of bodily injury," and any consideration of Husband's intent amounted to an error of law. (*Id.* at 11). Moreover, Wife argues that she presented sufficient evidence to demonstrate that she suffered "abuse," as defined by Section 6102(a)(5) of the PFA Act. Wife emphasizes her own testimony and exhibits from the PFA hearing, which demonstrated that Husband engaged in a course of conduct that caused Wife to fear for her safety.[3] Wife concludes that this Court must reverse the order dismissing her PFA petition and remand the matter for further proceedings. We disagree.

---

[3] Wife acknowledges that this Court generally defers to the credibility determinations of the trial court. Under the circumstances of this case, however, Wife contends that "this Court need not defer to the trial court's blanket credibility determination" against her. (Wife's Brief at 30). Wife also avers that the court "never made a finding about whether [Wife] reasonably feared bodily injury when [Husband] followed her for months to her home and her work." (*Id.* at 31). In response, the trial court issued a supplemental opinion noting that it "explicitly made a finding that [Wife] was not placed in reasonable fear of bodily injury by [Husband]." (Supplemental Opinion, dated 1/13/25, at 2).

"In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." ***Stamus v. Dutcavich***, 938 A.2d 1098, 1100 (Pa.Super. 2007) (quoting ***Drew v. Drew***, 870 A.2d 377, 378 (Pa.Super. 2005)).  "Assessing the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder." ***S.G. v. R.G.***, 233 A.3d 903, 907 (Pa.Super. 2020) (internal citation and quotation marks omitted).

When examining a challenge to the sufficiency of the evidence supporting a PFA order, our standard of review is as follows:

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence.  This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

***Id.*** at 909 (quoting ***Fonner v. Fonner***, 731 A.2d 160, 161 (Pa.Super. 1999)).

"[T]he purpose of the PFA Act is to protect victims of domestic violence from the perpetrators of that type of abuse and to prevent domestic violence from occurring." ***Diaz v. Nabiyev***, 235 A.3d 1270, 1272 (Pa.Super. 2020) (quoting ***Ferko-Fox v. Fox***, 68 A.3d 917, 921 (Pa.Super. 2013)).  The PFA Act defines abuse as follows:

**§ 6102.  Definitions**

**(a)      General rule.—**The following words and phrases when used in this chapter shall have the meanings given to

them in this section unless the context clearly indicates otherwise:

**"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

\* \* \*

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102(a)(5).

"In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of bodily injury." ***K.B. v. Tinsley***, 208 A.3d 123, 128 (Pa.Super. 2019). "The intent of the alleged abuser is of no moment." ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1263 (Pa.Super. 2008). "[A] victim does not have to wait for physical or sexual abuse to occur for the Act to apply." ***K.B., supra*** at 128.

Instantly, the court found Husband more credible than Wife:

[Wife's] own testimony was not credible, and the duplicative documentary evidence consisting of undated photographs[4]

---

[4] At the 2023 PFA hearing, Wife provided the court with four (4), black-and-white copies of photographs. Wife explained, "those are pictures of my face when he was hitting me." (N.T. PFA Hearing, 5/24/23, at 10). At the 2024 PFA hearing, Wife provided the court with color copies of the same
*(Footnote Continued Next Page)*

and a medical record from December 2010 did not convince the court that [Husband] engaged in acts that placed [Wife] in reasonable fear of either imminent serious bodily injury or bodily injury.

The court made credibility determinations on the basis of the testimony and demeanor of the parties, which findings are not subject to reversal on appeal. [Husband's] evidence relating to the proximity in time of [Wife's] having initially filed for protection from abuse and her having withdrawn approximately $4,000.00 from their bank account was afforded the weight the court deemed appropriate. [Husband's] testimony that he was present in August 2023 on several occasions outside [Wife's] place of work in order to procure evidence that she was in fact working was credible in light of the ongoing support litigation between the parties. [Wife's] earning capacity and actual income were issues relevant to the support litigation. Additionally, [Husband's] testimony that his presence at [Wife's] residence was for the purpose of serving her with papers pertinent to child custody was credible in light of the ongoing child custody litigation between the parties.

(Trial Court Opinion at 6). Our review leads us to conclude that the record supports the court's credibility determinations.

At the 2024 PFA Hearing, Husband mounted a defense against Wife's abuse allegations. Initially, Husband cross-examined Wife about many of the points she made during her direct examination. (*See* N.T. PFA Hearing, 4/18/24, at 32-36). For example, Husband asked Wife why she did not contact the police due to the serious nature of her injuries. (*Id.* at 32).

---

photographs. Wife also explained that she took the photographs of herself in January 2022. (*See* N.T. PFA Hearing, 4/18/24, at 14-15). These photographs were included in the certified record on appeal. (*See* Wife's Exhibit P-1, submitted 5/24/23; Wife's Exhibit P-1, submitted 4/18/24).

Regarding Wife's testimony that she saw Husband driving by her location in a car, Husband questioned how this was possible when his car windows are tinted. (*Id.* at 34).

Thereafter, Husband provided a statement to the court. (*Id.* at 37-45). Husband admitted that he possessed a knife in front of Wife in April 2023, but it was because he was cooking a meal in the kitchen. (*Id.* at 39). Husband also stated that Wife "drained the [bank] account and left me with three kids."[5] (*Id.* at 40). Husband also detailed his need to forward paperwork to Wife regarding parties' unresolved child custody and support issues:

> So, yes, I did go to her house one time because … we [have] custody and child support together. So, they asked me if … you could provide the address, so, that's why I went to—to see the address where she lives, so you could serve her whatever because she—her address was confidential at the beginning, before the … PFA, the first one that she … did.

(*Id.* at 41-42). Further, Husband testified that it was Wife's "choice to leave the house, so, I don't have no reason for me to harass her…. So, there is nothing now between us, except for the kids." (*Id.* at 44). Husband also provided a roundabout denial of Wife's allegations of physical abuse: "[S]he

---

[5] At the 2023 PFA hearing, Husband provided the court with a copy of the withdrawal slip executed by Wife to obtain $3,967.00 from the parties' bank account. (*See* Husband's Exhibit R-1, submitted 5/24/23). Husband also provided a copy of a bank account statement, which showed an account balance of $59.25 after the withdrawal. (*See* Husband's Exhibit R-2, submitted 5/24/23). At the 2024 PFA hearing, Husband provided the court with another copy of the withdrawal slip, but he did not provide another copy of the account statement. (*See* Husband's Exhibit R-1, submitted 4/18/24).

said that she been—she being hit all the time during the marriage. So, I don't know why she didn't call the cops on me." (***Id.***)

Considering the applicable standard of review, the court was free to credit Husband's testimony and exhibits. ***See S.G., supra***. Because the record supports the court's credibility determinations, we decline Wife's invitation to reweigh the testimony in her favor. ***Id.*** Regarding Wife's argument that the court committed legal error by improperly considering evidence of Husband's intent, we have examined the court's analysis. When viewed in context, the court's discussion of Husband's reasons for being outside Wife's residence and place of employment was part of its larger discussion about Husband's credibility. (***See*** Trial Court Opinion at 4). Accordingly, we affirm.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/9/2025