J-S42016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHRISTINA MARKEL O/B/O Z.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEPHANY DUCKER | : | |
| | : | |
| Appellant | : | No. 409 MDA 2025 |

Appeal from the Order Entered February 19, 2025
In the Court of Common Pleas of York County Civil Division at No(s):
2024-FC-002591-12A

BEFORE:  OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:                **FILED: JANUARY 21, 2026**

Appellant, Stephany Ducker ("Mother"), appeals *pro se* from the order entered in the York County Court of Common Pleas, under the Protection From Abuse ("PFA") Act,[1] in favor of Appellee, Z.D. ("Child").  We affirm.

The relevant facts and procedural history of this appeal are as follows. On December 17, 2024, Christina Markel filed a *pro se* PFA petition against Mother on behalf of fifteen-year-old Child.  The petition explained that Child was currently a member of Ms. Markel's household.[2]  This followed an incident where Mother locked Child out of the family home:

_____

[1] 23 Pa.C.S.A. §§ 6101-6122.

[2] At the PFA hearing, Ms. Markel explained that her daughter was a friend of Child.  (**See** N.T. Hearing, 2/19/25, at 7).  Child first went to live with Ms.
*(Footnote Continued Next Page)*

[Mother] locked [Child] out of the home during the day [of November 30, 2024] and refused to allow her to come inside. [Child] was refused medical care when she told her mother about her stomach pains and throwing up specks of blood. [Child] was in pain and the only place to lay was on trash bags outside of their front door. [Child] slept there for hours until she was woken up by her brothers being told that her mother was going to call CRISIS to "get rid of me." [Child] left with EMS due to fear for her safety.

(PFA Petition, filed 12/17/24, at 4). The petition also alleged that Mother had abused Child on prior occasions:

There has been years of abuse with multiple reports made to CYF. There is a history of withholding food as discipline. There is a history of physical abuse. There is drug use and alcohol abuse in the home; [Mother] is prohibited from using substances and is on parole.

Food is locked inside [Mother's] room so that the kids can't access it. Food has been taken from all kids when brought into the home from other resources.

(**Id.** at 5). Based upon these allegations, the court issued a temporary PFA order and scheduled a hearing on the matter.

Following several continuances, the court conducted a PFA hearing on February 19, 2025. At that time, both parties appeared with counsel. The court received testimony from Ms. Markel and Mother. The court also conducted an *in camera* interview with Child. After the interview, the court

---

Markel in the spring of 2024 while Mother was incarcerated at the county jail. (**Id.** at 7-9). Mother was released from jail that summer, and Child returned to Mother's residence in July. (**Id.** at 10). Nevertheless, Mother forced Child out of her home in November. (**Id.** at 11). At that point, Child resumed residing with the Markel family. (**Id.**) At the suggestion of a police officer, Ms. Markel later filed the PFA petition on Child's behalf. (**Id.** at 14).

summarized Child's testimony as follows:

> [B]asically she did report the incident with regard to where she had been sleeping, and her mother—she had locked the doors, and her mother came home. At which time, her mother was upset that the doors were locked and told [Child] to leave the residence, and when [Child] returned, the doors were locked. Her mother did not permit her to come in, and she was ill at the time and ended up sleeping for a few hours on some bags of clothes and a blanket outside, that her mother required her to turn over her phone prior to being let back into the house.
>
> She also reported an incident around Thanksgiving where apparently her and her brother were wrestling around, and she reported that at that time, her mother had thought she was attacking her brother and apparently intervened and she had indicated was—had consumed alcohol and was, what she termed … girl fighting with her thinking that she was harassing her brother.
>
> She indicted that throughout the many years, that she's been subjected to physical abuse, including being hit by wires, that she has concerns returning to the home, that she will be—continue to be—or have access to things such as marijuana and other items that—and alcohol and other items that she has not had access to, and, therefore, has not been having issues with while remaining at the Markels.
>
> \* \* \*
>
> She indicated she feels that while living with the Markels, she's been flourishing. She is no longer smoking marijuana. She is doing really well in school. She likes school. She wants to continue attending school.

(N.T. Hearing at 47-48). At the conclusion of the hearing, the court issued a

final PFA order in favor of Child. The order remains in effect until February

19, 2027, and it directs Mother not to abuse, harass, stalk, or threaten Child.[3]

Mother timely filed a *pro se* notice of appeal on March 17, 2025. On March 25, 2025, the court ordered Mother to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Mother timely filed a *pro se* Rule 1925(b) statement on April 4, 2025.

Mother now raises two issues for this Court's review:

> [Child and Ms. Markel] failed to present adequate evidence to support their allegations.
>
> The trial court record lacks substantial proof of abuse as defined by law.

(Mother's Brief at 13) (unnumbered).

Mother's issues are related, and we address them together. Mother insists that the allegations against her are false. Mother asserts that she initially contacted Ms. Markel to ask for help when Child was having a mental health crisis, but Child began to lie about Mother's behavior after living with Ms. Markel. Mother contends that Child instigated physical altercations with Mother, and Mother has called the police on occasions when Child goes missing without explanation. Mother claims that the PFA order has empowered Child to "do whatever she wants," which is damaging Child's life. (**Id.** at 4) (unnumbered). Mother also complains that she was interrupted while testifying at the PFA hearing, and the presiding jurist did not listen to her

---

[3] The final PFA order lists Child as the only plaintiff and makes no mention of Ms. Markel.

testimony. Mother concludes that the court erred in finding that she committed "abuse" as defined by the PFA Act, and this Court must vacate the final PFA order entered in favor of Child. We disagree.

When examining a challenge to the sufficiency of the evidence supporting a PFA order, our standard of review is as follows:

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

*S.G. v. R.G.*, 233 A.3d 903, 909 (Pa.Super. 2020) (quoting *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa.Super. 1999)).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa.Super. 2020) (quoting *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1262 (Pa.Super. 2008)). The PFA Act defines abuse as follows:

> **§ 6102. Definitions**
>
> **(a)      General rule.—**The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:
>
>    **"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological

parenthood:

*    *    *

    (2)   Placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S.A. § 6102(a)(2).

"In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury…." **Buchhalter, supra** at 1263 (quoting **Raker v. Raker**, 847 A.2d 720, 725 (Pa.Super. 2004)). "The intent of the alleged abuser is of no moment." **Id.** "While physical contact may occur, it is not a pre-requisite for a finding of abuse under [Section] 6102(a)(2) of the Act." **Fonner, supra** at 163. "[T]he victim of abuse need not suffer actual injury, but rather be in reasonable fear of imminent serious bodily injury." **Burke ex rel. Burke v. Bauman**, 814 A.2d 206, 208 (Pa.Super. 2002) (quoting **DeHaas v. DeHaas**, 708 A.2d 100, 102 (Pa.Super. 1998), *appeal denied*, 557 Pa. 629, 732 A.2d 615 (1998)).

Instantly, the trial court evaluated Mother's claims, and it disputed Mother's assertion that her testimony was somehow interrupted:

> In this matter, Mother's counsel conducted a full and thorough direct examination and indicated to the [c]ourt that the examination had concluded. Counsel for [Child] proceeded with cross-examination and, during cross-examination, the [c]ourt indicated that it had heard sufficient testimony to render a decision. This was fully within the prerogative of the [c]ourt to make and follow procedure effective for it to determine the truth and avoid wasting time. As indicated, Mother was given the opportunity to present anything she wanted in her direct testimony, which the court fully permitted. Moreover, the

[c]ourt was permitted by the Rules to control the conduct and hearing in its courtroom.[4]

(Trial Court Opinion, filed 5/9/25, at 3-4) (footnote omitted). Additionally, the court deemed Child's testimony credible. (*See id.* at 4). As such, the court determined that abuse had occurred in the past, and Child possessed a reasonable fear "for future bodily harm[.]" (*Id.*) Our review of the record supports these conclusions.

Here, Mother fully presented her defense to the allegations in the PFA petition during her direct examination. First, Mother denied "physically" disciplining Child. (*See* N.T. Hearing at 51). Mother also insisted that Child displayed several aspects of poor behavior: "Disrespect, doing drugs, bringing drugs in the house, lying, stealing, sneaking out." (*Id.* at 52). Mother acknowledged her incarceration, and she claimed that Child initially went to live with other family members. Mother admitted that she reached out to Ms. Markel only after Child "ran away from my older son and my older daughter because [Child] was being disrespectful." (*Id.* at 53).

Counsel also questioned Mother about Child's behavior following Mother's release from jail. Mother denied locking Child out of the residence and forcing Child to sleep outside. Instead, Mother claimed that Child slept

---

[4] Earlier in its opinion, the court cited Pennsylvania Rule of Evidence 611 for the proposition that "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to … avoid wasting time[.]" (Trial Court Opinion at 3) (quoting Pa.R.E. 611(a)(2)).

on piles of clothes that were inside the residence. (***See id.*** at 54). Mother maintained that she "could tell" Child was ill on the night in question, so Mother called 911 to request "an ambulance to send her to the emergency room." (***Id.*** at 62). Mother emphasized that she would never force Child out of their home, and Mother's preferred method of discipline was to "take away her phone, wi-fi." (***Id.*** at 56).

Regarding their physical altercation, Mother testified that Child attacked her:

> I found a young man on [Child's] bed in my house, like, 3 in the morning. And then my daughter jumped on top of me, and I fell on the bed, and I couldn't get up, and my daughter was on top of me. I couldn't get up. And I was bitten in my arm.

(***Id.*** at 58). Thereafter, Mother's attorney introduced several screenshots of text messages exchanged between Mother and Child after the filing of the PFA petition. (***See*** Mother's Exhibits 1a, 1b, and 1c). Mother relied upon these exhibits for the proposition that Child did not want to move forward with the PFA litigation.

After Mother's direct examination, Child's attorney commenced cross-examination. For approximately six minutes, the cross-examination addressed: 1) Mother's exhibits; 2) Mother and Child's physical altercation; 3) Mother's interactions with CYS; and 4) Child's allegation about Mother locking her out. (***See*** N.T. Hearing at 64-68). While Mother was making another denial of Child's allegation, the court announced that it had received enough

evidence to justify entering the final PFA order. (**Id.** at 68). On this record, we cannot say that the court ran afoul of Rule 611. Rather, the court received all of Mother's evidence and concluded that it was not credible. Considering the applicable standard of review, we defer to the court's credibility determination. **See S.G., supra**. Accordingly, we affirm the final PFA order entered in favor of Child.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/21/2026