Patrick F. DeHAAS, O.B.O.
E.D., M.D. & J.D.

v.

Mary J. DeHAAS, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 4, 1997.
Filed Jan. 29, 1998.
Reargument Denied April 8, 1998.

Leonard J. Frawley, Jr., Towanda, for appellant.

Joseph S. Vineski, Troy, for appellees.

Before DEL SOLE, TAMILIA and OLSZEWSKI, JJ.

DEL SOLE, Judge:

This is an appeal from an order granting Appellee father's petition for Protection from Abuse. The record shows that Appellee petitioned the court on behalf of his three children, E.D., M.D. and J.D. The facts underlying the petition were summarized by the trial court as follows:

> The credible evidence from the hearing was that Defendant was bathing her children that she became angry with the mess the children had made, that she held [E.D.] down on her back in the bathtub and splashed water in [E.D.'s] face until [E.D.] began to choke. [E.D.] was in fear of her mother. Defendant thereafter reported the incident to the mental health counselor.

The trial court found the evidence was sufficient to establish that Appellant abused E.D. and, therefore, ordered Appellant to refrain from abusing her again. In addition, the order granted Appellant visitation every other weekend and temporary custody and visitation for two one-week periods.

Appellant argues the evidence presented was not sufficient to prove that she "abused"

E.D. as that term is defined in the Protection From Abuse Act (PFAA), 23 Pa.C.S.A. §§ 6101–6118. She also claims that by directing the PFA Hearing to proceed even though the court dismissed the children's court-appointed counsel and refused to appoint another attorney to represent them, the court violated Section 6382(a) and (b) of the Child Protective Service Law (CPSL), 23 Pa.C.S.A. In addition, Appellant argues the trial court lacked jurisdiction over the matter because at the time of the hearing there was no PFA petition pending and the previously filed petition had been dismissed by the court more than 30 days earlier.

We will first address Appellant's claim regarding the trial court's jurisdiction. The record shows the petition was filed on March 15, 1995, and on March 24, 1995, the parties entered into a stipulation whereby Appellee agreed to withdraw the petition and agreed to supervised visitation for the children with Appellant. Thereafter, in response to a motion filed by the children's attorney, Asher Morris, the court scheduled a conference for the purpose of discussing an alleged breach of the stipulation. Following the conference, the court entered an order on June 1, 1995, directing that a hearing on the PFA petition be held on June 9, 1995 and that Appellant have supervised visitation with the children during the intervening weekend. After a postponement, the hearing was held on June 22, 1995. Appellee's counsel argued that by holding the hearing, the court was proceeding erroneously because it was, in effect, declaring the stipulation null and void and therefore, was giving Appellant "a second bite at the apple." The court responded as follows:

I am I guess candidly troubled by the procedure here. I guess I'm candidly troubled with the fact that it begins with an agreement that converts a protection from abuse proceeding into a custody proceeding, and I guess I'm troubled somewhat by the fact that it is brought before the court on what is titled a motion to review, and perhaps should have been brought as a contempt petition or petition to rescind the agreement, but I guess I'm just going to say this as simply and as plainly as I can. I'm concerned about the best interests of the children, and I want to get to the bottom of it right now. And we're going to hear testimony on what transpired and whether the court treats it hereafter as a protection from abuse proceeding or treats it as a special relief petition with respect to custody or visitation I'm not going to get troubled with that too much, but it's quite obvious that there are some serious allegations here, and it's also obvious that Mrs. DeHaas was for a time denied access altogether with the children. I guess I'm going to concede to you that you have raised some good points about procedural problems and irregularities here, and it may be a poor precedent that I'm setting, but I want to get to the bottom of it, give these people there[sic] day in court, because it has been batted around for quite some time.

N.T. 6/22/95 at 10–20.

■ We are cognizant of the fact that this case is fraught with procedural irregularities. However, we hold the trial court did not err in holding a hearing to review the merits of the PFA petition after the stipulation was breached. The parties entered into the stipulation as a compromise. When it was brought to the court's attention that the stipulation had been breached, however, its terms were no longer in effect and the court correctly considered the merits of the original petition.

■ Appellant's claim that the evidence was insufficient is also without merit. The trial court found the evidence was sufficient to show that Appellant "abused" E.D. as that term is defined in Section 6102(a)(2) of the PFAA. That section defines abuse as:

The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(2) Placing another in reasonable fear of imminent serious bodily injury.

In the instant case, E.D. testified that as her mother held her down, she swallowed water, which caused her to choke. N.T. 6/22/95 at 18. She stated that she was frightened until her mother stopped and she

was able to breathe again. *Id.* Appellant argues that while her behavior may have been "inappropriate" it did not constitute abusive behavior. She claims that she didn't attempt to inflict any physical injury and that, in fact, E.D. did not suffer any physical injury. As the Act clearly states, however, the victim of abuse need not suffer actual injury, but rather be in reasonable fear of imminent serious bodily injury. 23 Pa.C.S.A. § 6102(a)(2). Here, Appellant acknowledged that she was angry with E.D. when she physically restrained her in the bathtub and splashed her. In light of these facts, we hold that the trial court did not err in finding that Appellant "abused" E.D. as that term is defined in the PFAA.

Appellant's final claim is that the court abused its discretion in dismissing the children's court-appointed counsel and in failing to appoint new counsel to represent them at the June 22, 1995 hearing. Appellant argues the court's action deprived it of hearing a necessary third view, the view of the children. Appellant claims that if the children had had benefit of independent counsel, information might have surfaced which would have been beneficial to her.

■ In support of her claim, Appellant cites to § 6382(a) of The Child Protective Service Law (CPSL), 23 Pa.C.S.A. which directs that, "[w]hen a proceeding has been initiated alleging child abuse, the Court shall appoint a guardian ad litem for the child. The guardian ad litem shall be an attorney at law." Appointment of a guardian ad litem is not required, however, under the PFAA, and, therefore, this claim must fail. While the PFAA, in defining "abuse", references the CPSL, there is nothing in the PFAA which imposes the procedural requirements of the CPSL to proceedings instituted under the PFAA.[1] Accordingly, we hold that this issue is without merit.

Order affirmed.

TAMILIA, J., files a concurring opinion.

1. Subsection 6102(a)(4) of the PFAA defines child abuse as "[p]hysically or sexually abusing minor children, **including such terms as defined**

TAMILIA, Judge, concurring:

I concur in the result of the majority Memorandum. There is a significant difference between the scope and application of the Protection From Abuse Act (PFAA), 23 Pa. C.S. § 6101 *et seq.*, and Child Protective Service Law (CPSL), 23 Pa.C.S. § 6301 *et seq.* The Protection From Abuse Act is designed to prevent further abusive behavior by the members of a family unit to each other, including children therein, *Lee v. Carney,* 435 Pa.Super. 405, 645 A.2d 1363 (1994), *Weir v. Weir,* 428 Pa.Super. 515, 631 A.2d 650 (1993). The Child Protective Service Law is intended to prevent abuse to children only and to provide reporting to and supervision by Children and Youth Services for remedial services and ultimately bringing the child within the jurisdiction of the Juvenile Act, 42 Pa.C.S. § 6301 *et seq.* The PFAA does not entail state intervention resulting in removal of the child, whereas the CPSL can, in conjunction with the Juvenile Court, require a child to be "taken from its home and kept in protective custody in order to protect the child from further child abuse[.]" *Miller on Behalf of Walker v. Walker,* 445 Pa.Super. 537, 546–48, 665 A.2d 1252, 1257 (1995). Neither the PFAA nor the CPSL contain provisions that mandate counsel be provided in proceedings involving a child. It is the jurisdiction of juvenile court under the Juvenile Act that mandates legal counsel for the child. Section 6337, **Right to counsel**, provides:

Except as otherwise provided under this chapter a party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him. If a party appears without counsel the court shall ascertain· whether he knows of his right thereto and to be provided with counsel by the court if applicable. The court may continue the proceeding to enable a party to obtain counsel. Counsel must be provided for a child unless his parent, guardian, or custodian is present in court and affirmatively waive it. However, the par-

in Chapter 63 (relating to child protective services)" [emphasis added].

ent, guardian, or custodian may not waive counsel for a child when their interest may be in conflict with the interest or interests of the child. If the interests of two or more parties may conflict, separate counsel shall be provided for each of them.

The CPSL, as a substantive act, is dependent upon the Juvenile Act, which is procedural in nature, to adjudicate abuse or dependency and does not mandate removal of the child from the custody of the parents without an Order of the juvenile court. Under the PFAA, even transfer of custody to one parent from the other is done for a limited time under exigent circumstances which may be followed by a petition filed in the Domestic Relations Court. *See* 23 Pa.C.S. § 6108, **Relief**, (4).

In *Interest of J.R.W.*, 428 Pa.Super. 597, 631 A.2d 1019 (1993), this Court stated:

The Juvenile Act provides:

§ 6324. **Taking into custody**

A child may be taken into custody:

(1) Pursuant to an order of the court under this chapter.

... Section 6302 of the Act, **Definitions**, defines "dependent child" in relevant part as follows:

**"Dependent child."** A child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals[.]

By the doctrine of incorporation, as mandated by the Legislature, the definition of child abuse (the Law, 23 Pa.C.S. § 6303) quoted above is incorporated into this definition of a dependent child. The Act provides:

§ 6341. **Adjudication**

. . .

(c) **Finding of dependency.**—If the court finds from clear and convincing evidence that the child is dependent, the court shall proceed immediately or at a postponed hearing, which shall occur not later than 20 days after adjudication if the child has been removed from his home, to make a proper disposition of the case.

Thus, it is clear that under the Act, while incorporating the later additional legislation relating to child abuse provided under the Law, the Juvenile Court has the jurisdiction and the right to adjudicate child abuse and when such an adjudication is made pursuant to the Law, a "founded report" may be lodged with the Department of Welfare determining that the parents are the persons responsible for the abuse.

In summation, the Juvenile Court is *the proper and only judicial body which* has the capacity to make a determination that a child is abused and to affect a disposition of that child pursuant to the Act in conjunction with the Law. In doing so, that Court also had been given the right, pursuant to the Law, to establish on prima facie evidence whom the likely abusers would be under the circumstances. Thus, the standard of proof applied in determining abuse of the child for purposes of disposing of that finding in relation to placement of the child or supervision of the child is by clear and convincing evidence. By specific act of legislation, a determination as to who the abuser most likely would be is only required to be established by prima facie evidence. It is unquestioned in this case that the child was abused by clear and convincing evidence.

*Id.* at 608, 631 A.2d at 1024–25.

The implications of the above are clear. The finding by the court that E.D. was "abused" was not equivalent to such a finding by the Juvenile Court pursuant to its jurisdiction as to dependent (abused) children under the incorporation of the CPSL in the juvenile definition of dependency. As stated by this Court, the definition of abuse under the PFAA is broader than that of abuse under the CPSL and, therefore, jurisdiction may be exercised to protect a child under the PFAA, which would not be possible in Juvenile Court under the CPSL. As we stated previously, the requirement for a guardian ad litem in a PFAA proceeding is not required because the CPSL is not incorporated

in toto into the PFAA, since the court does not have the requisite subject matter jurisdiction to implement the CPSL.

In further amplification of the distinction between the proceedings, the standard of proof is by the preponderance of the evidence in PFAA cases, 23 Pa.C.S. § 6107, Hearings, *Snyder v. Snyder*, 427 Pa.Super. 494, 629 A.2d 977 (1993), whereas the standard of proof in court proceedings under the CPSL is clear and convincing evidence, *Interest of J.R.W., supra.*

In *Miller, supra,* this Court stated:

[I]t is clear that the definition of abuse under the Protection from Abuse Act is broader than the definition of child abuse under the Child Protective Services Act.

. . .

The goal of the Protection from Abuse Act is protection and prevention of further abuse by removing the *perpetrator* of the abuse from the household.

*Id.* at 549, 665 A.2d at 1258 (emphasis added).

Thus, it would be error to incorporate all the requirements and procedures of the CPSL into the hearings and procedures under the PFAA, when clearly the legislature and our decisions have provided that the Juvenile Court alone may act to implement the requirements of the CPSL.

It is this aspect of child removal, operating through the joint interaction of the CPSL and the Juvenile Act, which requires appointment of counsel that is not present in the PFAA. The PFAA does not require counsel for the child, as the child remains, in all cases, in custody of one of the parents. The action of the trial court in dismissing counsel for the child was proper and in compliance with the law.