J-A19024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

TEAL P. RISHEL

                Appellee

          v.

ANDRE DASHAWN FULLER

                Appellant

:   IN THE SUPERIOR COURT OF
:         PENNSYLVANIA
:
:
:
:
:
:
:
:
:     No. 483 MDA 2022

Appeal from the Order Entered February 15, 2022
In the Court of Common Pleas of Luzerne County
Civil Division at No(s):  10973-2019

BEFORE:   BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:        **FILED: SEPTEMBER 26, 2022**

Appellant, Andre Dashawn Fuller ("Father"), appeals *pro se* from the order entered in the Luzerne County Court of Common Pleas, denying his petition for modification of an order entered under the Protection from Abuse ("PFA") Act,[1] in favor of Appellee, Teal P. Rishel ("Mother").  We affirm.

The trial court opinion set forth the relevant facts and procedural history of this appeal as follows:

> The parties have a minor child, E.F. [("Child")].  [Father] has been incarcerated for the entire life of [Child] and has only seen [Child] a few times.
>
> On September 3, 2019, a temporary [PFA] order was entered against [Father] in the Court of Common Pleas of Luzerne County.  The temporary order directed that [Father]

---

[*] Former Justice specially assigned to the Superior Court.

[1] 23 Pa.C.S.A. §§ 6101-6122.

shall not abuse, harass, stalk, threaten, or attempt or threaten to use physical force against [Mother] in any place where she may be found. The temporary order further directed that [Father] shall have no contact with [Mother] by any telephone, or by any other means, including third persons. Additionally of importance, the order specifically directed that until a final hearing, [Father] is to have "no contact" with his child, and awards temporary custody of [Child] to [Mother]. A hearing on the final [PFA] order was scheduled before the court on September 10, 2019.

At the September 10, 2019 hearing, a final [PFA] order was entered for a three-year period, expiring on September 10, 2022. The final order was entered into by agreement without admission of wrongdoing. With regard to contact with [Child], the final [PFA] order specified that [Father] may have contact with [Mother] "via text only regarding the welfare of the minor child."

On January 16, 2020, [Father] was arrested for an alleged violation of the final [PFA] order…. On February 13, 2020, [Father] pled guilty to indirect criminal contempt, and was sentenced to a term of incarceration at the Luzerne County Correctional Facility for a period of six (6) months, to be served consecutive to any sentence that [Father] was currently serving. … At the time of [Father's] sentencing, the court extended [Mother's] final [PFA order] to February 13, 2023. The extended order removed the provision allowing [Father] to contact [Mother] through text message and prohibited him from having any contact with her whatsoever. The extended final order further clarified that [Mother] has full physical and legal custody of [Child].

On November 8, 2021, [Father] filed a [*pro se*] "petition for modification of [PFA] order," seeking to modify the extended final order to permit him to call [Mother] from the correctional facility to have contact with [Child]. On February 15, 2022, following a hearing before [the trial court], [Father's] modification request was denied.

(PFA Court Opinion, filed 4/22/22, at 1-2) (some capitalization and footnote omitted). Father timely filed a *pro se* notice of appeal on March 16, 2022,

along with a Pa.R.A.P. 1925(a)(2)(i) concise statement of errors.

Father now raises one issue for our review:

> Whether the trial court committed an error of law or abused its discretion by denying [Father's] petition to modify existing [PFA] order basing judgment on a two (2) year old violation and failing to consider the required factors set forth in 23 Pa.C.S.A. § 5328(a) relating to the best interest of a minor child.

(Father's Brief at 1).

On appeal, Father acknowledges the alleged violation of the final PFA order that resulted in his indirect criminal contempt conviction. Father insists, however, that he had a legitimate excuse for his conduct. Father claims that he "was informed of [Child] suffering an injury placing him in the hospital," and he could not send a text message to Mother to inquire about Child's status due to his incarceration. (*Id.* at 7). Moreover, Father asserts that he called "the cellular phone used by [Child] but belong[ing] to" Mother. (*Id.*) Father emphasizes that he attempted to contact Child directly, which would not have violated the final PFA order. Under these circumstances, Father argues that the PFA court should not have relied upon a stale and unintentional violation of the final PFA order as a basis for denying his modification petition.

Father further argues that he filed the modification petition at issue only after seeking greater custody rights in family court.[2] Father contends that the

_____

[2] We observe that the prothonotary docketed Father's family court action at No. 11235 of 2019. In that case, Father filed a petition for modification of an
*(Footnote Continued Next Page)*

family court did not permit video visits or telephone calls with Child, and the family court "suggested … that [Father] seek modification" of the final PFA order as the first step toward obtaining more custody. (*Id.* at 9). Because Father filed the petition for modification of the final PFA order as a vehicle "to obtain communication with" Child, Father posits that the PFA court was required to evaluate the statutory custody factors, set forth in the Child Custody Act, before it disposed of the instant petition. (*Id.*) In addition to the custody factors, Father submits:

> Public policy in Pennsylvania is that the best interests of children are served by permitting them to maintain a meaningful relationship with both parents; as a consequence, contact between parents and child will be disallowed only in extreme situations where the parental contact would have severe adverse impact upon the child's welfare.

(*Id.* at 11). Based upon the foregoing, Father concludes that the PFA court erred or abused its discretion by denying his petition for modification of the final PFA order. We disagree.

"Our standard of review for PFA orders is well settled. In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa.Super. 2020) (internal citation and quotation marks omitted).

---

existing custody order to provide him with monthly video visits or telephone calls. On August 2, 2021, the family court denied Father's petition. This Court affirmed the denial of relief on March 9, 2022. *See Rishel v. Fuller*, 276 A.3d 223 (Pa.Super. 2022) (unpublished memorandum).

> The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, with the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Mescanti v. Mescanti*, 956 A.2d 1017, 1019 (Pa.Super. 2008) (quoting *Custer v. Cochran*, 933 A.2d 1050, 1053-54 (Pa.Super. 2007) (*en banc*)).

"Assessing the [c]redibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder." *S.G. v. R.G.*, 233 A.3d 903, 907 (Pa.Super. 2020) (quoting *S.W. v. S.F.*, 196 A.3d 224, 230 (Pa.Super. 2018)). "In reviewing the validity of a PFA order, this Court must … defer to the [PFA] court's determination of the credibility of witnesses at the hearing." *C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276-77 (Pa.Super. 2019).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *E.K., supra* at 519 (quoting *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1262 (Pa.Super. 2008)). "[T]he victim of abuse need not suffer actual injury, but rather be in reasonable fear of imminent serious bodily injury." *Burke ex rel. Burke v. Bauman*, 814 A.2d 206, 208 (Pa.Super. 2002) (quoting *DeHaas v. DeHaas*, 708 A.2d 100,

102 (Pa.Super. 1998), *appeal denied*, 557 Pa. 629, 732 A.2d 615 (1998)).

The PFA Act also contemplates that a final PFA order may include an award of temporary custody of minor children:

**§ 6108.  Relief**

**(a)  General rule.**—Subject to subsection (a.1), the court may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children.  The order or agreement may include:

\* \* \*

(4)  Awarding temporary custody of or establishing temporary visitation rights with regard to minor children.  In determining whether to award temporary custody or establish temporary visitation rights pursuant to this paragraph, the court shall consider any risk posed by the defendant to the children as well as risk to the plaintiff.  The following shall apply:

\* \* \*

(iii)  Where the court finds after a hearing under this chapter that the defendant has inflicted serious abuse upon the plaintiff or a child or poses a risk of abuse toward the plaintiff or a child, the court may:

(A)  award supervised visitation in a secure visitation facility; or

(B)  deny the defendant custodial access to a child.

\* \* \*

(v)  Nothing in this paragraph shall bar either party from filing a petition for custody under Chapter 53 (relating to custody) or under the Pennsylvania Rules of Civil Procedure.

- 6 -

* * *

23 Pa.C.S.A. § 6108(a)(4).

Significantly, this Court has determined that "a PFA court need not conduct a best interests custody analysis to award **temporary** custody as [a] form of relief under section 6108 of the [PFA] Act." *C.H.L., supra* at 1281 (emphasis in original).

> Custody wise, a PFA order is not designed to impose anything but emergency relief. *See Dye for McCoy*[ *v. McCoy*, 621 A.2d 144, 145 (Pa.Super. 1993)]. To understand this, look no further than the PFA Act: "Nothing in this paragraph [relating to temporary custody as a form of relief] shall bar either party from filing a petition for custody under Chapter 53 (relating to custody) or under the Pennsylvania Rules of Civil Procedure." But while the domestic violence emergency is still pending, a PFA order may alter a pre-existing custody order and remand for clarification to avoid conflict. *See Dye for McCoy*, 621 A.2d at 145. "To hold otherwise would have the effect of emasculating the central and extraordinary feature of the PFA which is to prospectively control and prevent domestic violence." *Id.*
>
> Moreover, the PFA Act does not require a child to be physically struck before a court can award temporary sole custody to a plaintiff. The court may do so even though the defendant has inflicted serious abuse upon the plaintiff alone.
>
> * * *
>
> **[W]hen awarding temporary custody out of a PFA order, the court need only consider the risk the defendant poses to the child as well as the plaintiff.**

*Id.* at 1281-83 (emphasis added) (some internal citations omitted).

Instantly, the PFA court conducted a hearing on Father's modification

petition on February 15, 2022. At that time, Mother testified that Father has no relationship with Child. (*See* N.T. Hearing, 2/15/22, at 4). Mother elaborated on Father's involvement, indicating that she "did try to facilitate phone calls" when Child was younger. (*Id.*) Father, however, would "say some inappropriate things, and then try to get [Child] to give [Mother] the phone[.]" (*Id.*) Father's inappropriate comments included: 1) blaming Mother for Father's inability to live with Child; 2) insinuating that Mother somehow "allowed" Child to contract the COVID-19 virus; and 3) disparaging Mother's decision to make Child wear glasses. (*Id.* at 4-5). Mother also testified that Child has not spoken with Father for approximately two (2) years, and "opening up any sort of contact is going to disrupt what [Child] knows and what he's comfortable with and it's going to confuse him." (*Id.* at 5).

Mother also explained that she is "terrified" of Father. (*Id.* at 9). Mother claimed that Father attempted to murder another individual, and "[h]e made threats to kill [Mother] and [her] fiancé." (*Id.*) Upon Father's release from prison, Mother "probably will be hiding in [her] house," and she would "go into witness protection" if it were possible. (*Id.*)

The court expressly found Mother's testimony to be credible. (*See* PFA Court Opinion at 3). The court also relied on Mother's testimony to draw the following conclusions:

> This court has a serious concern with [Father] using the minor child as a tool to speak to and locate [Mother].... The

- 8 -

court found [Mother's] fear of [Father] to be credible, especially after learning that [Father] has apparently obtained her address, which has been confidential for years.[3] The court found that based on the credible testimony of [Mother], coupled with the past actions of [Father], any contact from [Father] to [Mother] would be harmful and put her at risk. [Father's] actions and the history of this case demonstrate that [Father] cannot comply with the relief that he is requesting.

(*Id.* at 4) (some capitalization and citations to the record omitted).

On this record, we cannot say that the PFA court's consideration of Father's "actions and the history of this case" constituted an abuse of discretion or error of law. *See Mescanti, supra*. Regarding Father's argument that the PFA court was required to conduct a "best interests" analysis using the statutory custody factors, we reiterate that "the court need only consider the risk the defendant poses to the child as well as the plaintiff." *See C.H.L., supra*; 23 Pa.C.S.A. § 6108(a)(4). We cannot fault the manner in which the PFA court considered the risk that Father poses to Child and Mother in the instant case. Accordingly, we affirm the order denying Father's petition for modification of the final PFA order.

---

[3] Father testified that he obtained Mother's purportedly confidential address "[f]rom the police." (*See* N.T. Hearing at 10).

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/26/2022</u>