J-A11022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ASHLEY D. GOODYEAR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CODY JACOB GORSUCH | : | |
| | : | |
| Appellant | : | No. 1726 MDA 2024 |

Appeal from the Order Entered October 31, 2024
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 2024-11228

BEFORE: MURRAY, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:        **FILED: MAY 12, 2025**

Appellant, Cody Jacob Gorsuch, appeals from the order entered in the Cumberland County Court of Common Pleas, under the Protection from Abuse Act ("PFA" or "the Act"),[1] in favor of Appellee, Ashley D. Goodyear. We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> [Appellee] filed a petition for protection from abuse against [Appellant] on October 23, 2024.[FN1] The couple had recently divorced. [Appellant] had physically abused [Appellee] throughout their 12-year marriage. Prior to their separation, [Appellant] had threatened [Appellee] while holding a gun to her head. He had also beaten and strangled her during a vacation in Mexico. The most recent physical abuse was alleged to have occurred in June of 2024.[FN5]

---

[*] Former Justice specially assigned to the Superior Court.

[1] 23 Pa.C.S.A. §§ 6101-6122.

FN1 She asked for and was granted a temporary protection from abuse order after an *ex parte* hearing.

FN5 … This allegation was not a factor in [the court's] decision since [it] did not find either party's version of events to be entirely credible.

After they separated, [Appellant] stalked [Appellee] at the home she shares with her brother. He would sit in his vehicle in the lot beside her house for no apparent reason. He told [Appellee] that he was there "hunting," yet he remained in the vehicle. She and her brother saw him drive by her house often. Her surveillance camera also captured him repeatedly driving by her home. On September 9, 2024, [Appellant] made threats to [Appellee's] brother and vowed to make [Appellee's] life unbearable. [Appellee] interpreted that threat to include physical violence based on her past experiences with him. Later that day, after making sure no one was home, [Appellant] sent the couple's child into [Appellee's] home to remove the family dogs.FN9 That event was caught on video.

FN9 … The ownership of the dogs was contested.

[Appellant] testified at the hearing as well. He mostly complained about how [Appellee] torments him. He pointed out that he had to obtain a PFA against her. He also admitted to sending their child into [Appellee's] home to remove the dogs. … It was clear that the parties had a vitriolic relationship that involved a history of mutual physical abuse.FN10

FN10 [The court notes] that [Appellant] also obtained a protection from abuse order against [Appellee]. Neither party had clean hands at the time of the hearing. However, that did not prevent [the court] from finding that [Appellee] was in reasonable fear of [Appellant]. Each has reason to fear the other. They both appeared to be volatile, unstable and likely to inflict harm on one another.

(Trial Court Opinion, 1/3/25, at 1-3) (some footnotes omitted). Following the

hearing, on October 31, 2024, the court entered a final PFA order.

On November 27, 2024, Appellant timely filed a notice of appeal. On December 2, 2024, the court ordered him to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and Appellant timely complied on December 18, 2024.[2]

On appeal, Appellant raises the following issues for our review:

I. Whether the PFA court erred as a matter of law or abused its discretion in entering a PFA Order where the evidence was insufficient to support the PFA court's finding of abuse within the meaning of the Protection from Abuse Act?

II. Whether the PFA court erred as a matter of law or abused its discretion in entering a PFA Order after making a finding that the plaintiff is in reasonable fear of bodily injury as the specified act found by the PFA court does not meet the definition of abuse pursuant to 23 Pa.C.S.[A] § 6102(a)(2) which requires placing another in reasonable fear of imminent serious bodily injury?

III. Whether the PFA court abused its discretion in denying the admission of evidence by severely limiting the plaintiff from being cross-examined concerning[,] and the defendant from testifying about[,] the PFA petition the defendant filed against the plaintiff, the resulting PFA Order entered against the plaintiff, and the pending indirect criminal contempt proceedings involving the plaintiff being charged with violating the PFA Order?

(Appellant's Brief at 4).

We address Appellant's first two issues together. Appellant argues that the evidence was insufficient to support the entry of a final PFA order.

_____

[2] On December 17, 2024, this Court designated the appeal as a Children's Fast Track case pursuant to Pa.R.A.P. 102, because the October 31, 2024 PFA order appeared to affect the physical custody of the parties' child.

Specifically, Appellant contends that the court erred in determining that his pre-separation conduct constituted abuse under 23 Pa.C.S.A. § 6102(a)(1) and (2). According to Appellant, the proper issue before the court was whether there was a current threat of abuse that warranted the need for a protective order and that the court erred in placing any weight on the past acts.

Further, Appellant claims that the court erred in finding that his actions following the parties' separation placed Appellee in reasonable fear of bodily injury. Appellant acknowledges that "imminent" and "serious bodily injury" are not defined under the Act, but he submits that "imminent" is commonly defined as threatening to occur immediately, and "serious bodily injury" is defined under the Crimes Code as injury creating a substantial risk of death or permanent, serious disfigurement. Appellant suggests that the record does not establish that Appellee was in imminent fear. Appellant concludes that the court erred by entering a final PFA order, and this Court must grant relief. We disagree.

When examining a challenge to the sufficiency of the evidence supporting a PFA order, our standard of review is as follows:

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who

appeared before it.

*S.G. v. R.G.*, 233 A.3d 903, 909 (Pa.Super. 2020) (quoting *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa.Super. 1999)).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa.Super. 2020) (quoting *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1262 (Pa.Super. 2008)). The PFA Act defines abuse as follows:

**§ 6102. Definitions**

**(a) General rule.—**The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:

**"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

\* \* \*

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

\* \* \*

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102(a)(1), (2), (5).

"In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury…." **Buchhalter, supra** at 1263 (quoting **Raker v. Raker**, 847 A.2d 720, 725 (Pa.Super. 2004)). "Past acts are significant in determining the reasonableness of a PFA petitioner's fear." **E.K., supra** at 519. "The intent of the alleged abuser is of no moment." **Id.** "While physical contact may occur, it is **not** a pre-requisite for a finding of abuse under [Section] 6102(a)(2) of the Act." **Fonner, supra** at 163 (emphasis added). "[T]he victim of abuse need not suffer actual injury, but rather be in reasonable fear of imminent serious bodily injury." **Burke ex rel. Burke v. Bauman**, 814 A.2d 206, 208 (Pa.Super. 2002) (quoting **DeHass v. DeHass**, 708 A.2d 100, 102 (Pa.Super. 1998), *appeal denied*, 557 Pa. 629, 732 A.2d 615 (1998)).

Instantly, the PFA court observed:

[The court was] satisfied that [Appellant] had "abused" [Appellee] under the definitions contained in subsections (1) and (2) throughout the course of their marriage. [The court was] further satisfied that [Appellant's] conduct post-separation constituted "abuse" under subsection (5).

The PFA Act only requires a petitioner to establish that abuse occurred by a preponderance of the evidence. **K.B. v. Tinsley**, 208 A.3d 123, 128 (Pa.Super. 2019). A preponderance of the evidence standard is defined simply as the greater weight of the evidence which would be enough to slightly tip a scale. [**Raker, supra** at 724]. In

applying the law to the facts presented at the hearing, [the court's] objective was to determine the reasonableness of [Appellee's] fear of [Appellant]. His past acts were certainly relevant in determining whether her fear of continued abuse is reasonable.

We heard evidence from [Appellee] that [Appellant] would routinely drive by her home for no apparent reason. In addition, she confronted him while his vehicle was parked in the lot beside her home. When confronted, he told her that he was hunting. Yet, he never left his car. He was essentially stalking her. While [Appellant] testified, he neither denied sitting outside her home in his vehicle, nor attempted to explain why he was captured on video driving by her house.

[Appellee] also testified to the abuse that occurred during the course of their 12-year relationship. She was strangled and beaten by [Appellant]. She had a gun put to her head while [Appellant] threatened her. Post-separation, he engaged in a course of conduct that put her in fear for her safety. In September of 2024, after threatening to make her life unbearable, he canvassed her home, stalked her, and used their child to remove the family dogs from her possession. Many of these events were caught on video.

We believed [Appellee] when she testified that she was afraid of [Appellant]. The history of abuse during their marriage coupled with the most recent events set forth above were sufficient to convince us that she was in reasonable fear of bodily injury.[FN12]

> [FN12] As stated above, there was a long history of mutual violence between the parties. The fact that [Appellant] had his own PFA order against [Appellee] does not disqualify her from obtaining one against him.

(Trial Cout Opinion, 1/3/25 at 4-5).

The record supports the court's conclusions. Here, the past acts of Appellant were relevant because they informed Appellee's fear of him.

Therefore, Appellant's acts of "canvassing" her home and "essentially stalking" her placed Appellee in reasonable fear of imminent serious bodily injury. *See Burke, supra*; *Fonner, supra*. Further, the court evaluated the testimony from both parties and disregarded a June 2024 incident of physical abuse because it did not find either party's version of events credible. (**See** Trial Court Opinion at 2). In light of the applicable standard of review, we defer to the court's remaining credibility determinations in Appellee's favor. *See S.G., supra*. Finally, we reject Appellant's arguments regarding the definition of subsection (a)(2), as the PFA court explicitly found that Appellant's post-separation conduct satisfied subsection (a)(5), and the record supports this determination. *See* 23 Pa.C.S.A. § 6102(a)(5). On this record, the evidence was sufficient to support entry of the PFA order. *See S.G., supra*. Appellant is not entitled to relief on his first two claims.

In his remaining issue, Appellant argues that the court abused its discretion "in denying the admission of evidence" by allegedly limiting Appellee from being cross-examined concerning, and Appellant testifying regarding, the PFA petition that Appellant had filed against Appellee, the PFA order entered against Appellee, and the pending indirect criminal contempt proceedings that Appellee had been charged with after violating the PFA order. Appellant admits that the temporary and final PFA orders entered against Appellee **were** admitted into evidence, but he claims that "a review of the record establishes that they were very reluctantly admitted by the PFA court as exhibits and were not properly considered in reaching its conclusions."

(Appellant's Brief at 26). Appellant concludes he is entitled to relief on this claim. We disagree.

> Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present. In **Snyder v. Snyder**, [629 A.2d 977 (Pa.Super. 1993)], the court held that a person filing a [PFA] petition will not be rigorously limited to the specific allegation of abuse found in the Petition. The court further held that in light of the purpose of the Act to prevent imminent harm to abused person(s), some flexibility must be allowed in the admission of evidence relating to past acts of abuse.

**Buchhalter, supra** at 1263 (quoting **Raker, supra** at 726) (some internal citations and quotation marks omitted).

Instantly, regarding Appellant's claim that the court had prevented the admission of evidence or limited testimony, the PFA court observed:

> [The court] did no such thing. The final PFA order against [Appellee], as well as the temporary order, were admitted into evidence and considered by [the court]. [The court] also note[s] that [it] did not "limit" [Appellant's] cross-examination of [Appellee], or her direct examination of [Appellant], except to keep out redundancies or irrelevant information.
>
> [The court] thoroughly considered the evidence, including [Appellant's] PFA against [Appellee], as well as her alleged contact with [Appellant] in violation of the order. [Appellant] argued that her continued contact with him despite the order against her shows that she did not fear him. However, [Appellant] also continued to have contact with [Appellee]. By his logic, [the court] should not believe his assertion that he fears her. Nonetheless, [the court was] satisfied that the parties could (and did) both fear and intimidate each other. The two are not mutually exclusive. It is merely a matter of which emotion (*i.e.* fear or anger) is

at the forefront at the time of action.

(Trial Court Opinion at 5-6) (footnotes omitted).

A review of the record supports the trial court's conclusions. Contrary to Appellant's assertions, the court admitted the PFA order against Appellee and testimony regarding Appellee's alleged violation of the order. (**See** N.T. Hearing, 10/30/24, at 7-8). It was only when Appellant attempted to continue questioning Appellee about scheduled contempt hearings, after already having introduced the order and testimony, or when trying to introduce hearsay testimony from police officers, that the trial court cut off such questioning. (**See id.** at 10-11). The record makes clear that the court considered both the PFA order against Appellee as well as the fact that Appellee was charged with indirect criminal contempt for violating it. Appellant is now essentially asking this Court to reweigh the evidence in his favor, which we will not do. Appellant is not entitled to relief on this claim. Accordingly, we affirm the PFA order entered against Appellant.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/12/2025