**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ALFONZO A. POWELL, ON BEHALF OF M.P. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| NADIA SANFORD | : | |
| | : | |
| Appellee | : | No. 707 EDA 2023 |

Appeal from the Order Entered February 28, 2023
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): 2211V7016

BEFORE: BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED NOVEMBER 28, 2023**

Appellant, Alfonzo A. Powell ("Father"), on behalf of M.P. ("Child"), appeals from the order entered in the Philadelphia County Court of Common Pleas, under the Protection from Abuse ("PFA") Act,[1] in favor of Appellee, Nadia Sanford ("Mother"). We affirm.

The relevant facts and procedural history of this appeal are as follows. The parties are the parents of Child, who was born in October 2015. After Child's birth, the parties divorced. Mother obtained primary physical custody of Child, and Father received partial physical custody on weekends. On November 7, 2022, Father filed a PFA petition, on behalf of Child, against Mother. In the PFA petition, Father alleged that Child told him that Mother

---

[1] 23 Pa.C.S.A. §§ 6101-6122.

had hit Child on the arm, and Child was afraid of Mother. Based upon these allegations, the court issued a temporary PFA order and scheduled a hearing on the matter.

On February 28, 2023, the court held the PFA hearing. The court summarized Father's testimony as follows:

> [Father] testified that on November 6, 2022, [Child] told him that [Mother] had hit him on the arm that day and that he was afraid of [Mother]. [Father] testified that in the past he has seen bruises on his son "numerous times" and that he has "called DHS a lot of times" even though prior to November 6th, [Child] "wouldn't come forward and tell [Father] what happened, and so prior to that, [Father] couldn't do anything." [Father] introduced photos of [Child's] arm, which were later admitted into evidence. When asked if the photos of [Child's] arm were taken on November 6th, [Father] stated that the photos were taken on August 29, 2022, and were unrelated to the filing incident. The first image, marked P-1, shows a close-up of a bruise on [Child's] forearm. The second photo, marked P-2, shows a full body image of [Child] standing with his arm outstretched with what appears to be the same bruise as P-1.
>
> [Father] testified about a text message he received from [Child] in January 2023. [Father] stated that the text message said, "Daddy, please help me," with crying emojis. … [Father] stated that [Child] told [Father] that he was scared [Mother] was going to "get him" when she got home because he broke a mirror when kicking a ball in the house. [Father] testified that when he picked up [Child] for his custodial time that week, he asked [Child] if [Mother] had hit him. [Father] testified that [Child] told [Father] that [Mother] had not hit him.
>
> [Father] testified that [Child] texted him on January 24, 2023 that he was leaving [Mother's] house and never coming back. [Father] testified that [Child] sent [Father] a video of [Child] leaving [Mother's] house walking alone with no coat on. This video was admitted into evidence. [Father]

testified that he called [Child] and asked him what was wrong and told [Child] that he was coming. [Father] stated that [Child's] half-sister[, M.A.-R.,] had, by that time, come out of [Mother's] house and had taken [Child's] phone, so [Father] went to [Mother's] house and knocked on the door. [M.A.-R.] would not let [Father] in, so [Father] called the police. When the police arrived, [Father] asked them to check on [Child]. The police spoke to [Child] and let [Father] speak to [Child]. [Father] testified that [Child] told [Father] that he was afraid [Mother] was going to beat him because he did not zip up his coat after getting off of the school bus. [Father] claimed that when he picked [Child] up for [Father's] custodial time that Friday, [Child] told [Father] that when [Mother] arrived home on January 24th "she kept hitting him, and smacking him, and hit him in his head" and beat him with a wooden brush. [Father] did not testify to or offer any evidence of physical injury to [Child] as a result of this incident. [Father] testified that he filed a police report the next day. [Mother] objected to the police report being entered into evidence, and the objection was sustained.

[Father] testified that he had a PFA order against [Mother] while they were married. [Father] testified that [Mother] tried to hit [Child] during [the parties'] marriage. [Father] recalled that, more than four years ago, [Mother] "almost smashed [Child's] arm out of his socket trying to get him away from me when I was protecting [Child] from her."

(Trial Court Opinion, filed 6/5/23, at 2-4) (internal footnote and record citations omitted).

Father then called Child to testify. The court began by questioning Child to determine whether he was competent.

The [court] established that [Child] knew a truth from a lie. The [court] then asked, "So when your mom told you that you wouldn't be going to school, and you would be coming here; did she tell you why you were coming here?" [Child] answered, "I forgot." The [court] continued to ask if [Child] knew why he was in court today, and again [Child] responded, "I really don't remember." The [court] asked

- 3 -

[Child], "Do you think that we're here to talk about school?" [Child] responded, "Yeah." The [court] asked [Child] a few more questions, and [Child] continued to indicate that he thought he was in court to talk about school.

(*Id.* at 4) (internal record citations omitted).

The court found Child incompetent to testify. Nevertheless, the court gave Father a last chance to establish competence. Father's counsel asked Child if Child knew where he was, and Child shook his head to indicate that he did not know. (*See* N.T. PFA Hearing, 2/28/23, at 57). Counsel asked if Child knew if he was in a courtroom, and Child nodded his head to indicate that he did know. (*Id.* at 57-58). Counsel asked if Child knew why he was in the courtroom, and child shook his head to indicate that he did not know. (*Id.* at 58). Counsel asked if anyone told Child why he was in court, and Child said, "No." (*Id.*) Following counsel's questions, the court excused Child from the courtroom. Before Child left the courtroom, the court permitted counsel to ask Child one more question, and counsel asked whether Child was afraid "right now." (*Id.* at 59). Child shook his head to indicate he was not afraid. (*Id.*)

Thereafter, Mother testified that she "never struck [Child]." (*Id.* at 65). When asked if she knew how Child got bruises on his arm, Mother noted that "[Child] is a wild child. He jumps off things and, you know, jumps around. This is how he got those bruises, I'm assuming." (*Id.* at 60). Mother admitted that she suffers from a "mood disorder," but she insisted that it does not cause her to "go into a fit of rage." (*Id.* at 63-64). Mother then called M.A.-R., her

13-year-old child from another relationship, who denied seeing any conduct by Mother that threatened Child's safety. At the conclusion of the hearing, the court found that Father had not met his burden of proof. Consequently, the court vacated the temporary PFA order and dismissed the action without prejudice.

On March 20, 2023, Father timely filed a notice of appeal. That same day, the court ordered Father to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Father filed his Rule 1925(b) statement on April 6, 2023.

Father now raises two issues for our review:

Did the court abuse its discretion by ruling that [Child] was not competent to testify?

Did the court abuse its discretion by not considering the testimony of [Father]?

(Father's Brief at 3).

In his first issue, Father argues the evidence of record supports a conclusion that Child was competent to testify. Father insists that Child is "highly intelligent … with the capacity to communicate, to observe events and accurately recall observations, and to understand the necessity to speak the truth." (*Id.* at 19). Father complains that "[t]he fact that [Child] did not know why he was in court or that neither of his parents told him why [Child] was in court in no way as a matter of law justifies a judicial ruling that [Child] was incompetent as a witness." (*Id.*). Father concludes that the court abused

its discretion in finding that Child was incompetent to testify. We disagree.

"[T]he purpose of the [PFA Act] is to protect victims of domestic violence from the perpetrators of that type of abuse and to prevent domestic violence from occurring." *Diaz v. Nabiyev*, 235 A.3d 1270, 1272 (Pa.Super. 2020) (quoting *Ferko-Fox v. Fox*, 68 A.3d 917, 921 (Pa.Super. 2013)).

> Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present. In *Snyder v. Snyder*, [629 A.2d 977 (Pa.Super. 1993)], the court held that a person filing a [PFA] petition will not be rigorously limited to the specific allegation of abuse found in the [p]etition. The court further held that in light of the purpose of the Act to prevent imminent harm to abused person(s), some flexibility must be allowed in the admission of evidence relating to past acts of abuse.

*Buchhalter v. Buchhalter*, 959 A.2d 1260, 1263 (Pa.Super. 2008) (quoting *Raker v. Raker*, 847 A.2d 720, 726 (Pa.Super. 2004)) (some internal citations and quotation marks omitted). "In light of the protective purposes of the act, it [is] within the trial court's discretion to hear any relevant evidence that would assist it in its obligation to assess the [complainant]'s entitlement to and need for a [PFA] order." *Diaz, supra* at 1273 (quoting *Miller on behalf of Walker v. Walker*, 665 A.2d 1252, 1259 (Pa.Super. 1995)).

"Although witnesses are generally presumed to be competent, Pennsylvania law presently requires that child witnesses be examined for competency." *Interest of K.B.*, 265 A.3d 818, 821 (Pa.Super. 2021).

- 6 -

As we have recently reiterated, this Court historically has required that witnesses under the age of fourteen be subject to judicial inquiry into their testimonial capacity. A competency hearing of a minor witness is directed to the mental capacity of that witness to perceive the nature of the events about which he or she is called to testify, to understand questions about that subject matter, to communicate about the subject at issue, to recall information, to distinguish fact from fantasy, and to tell the truth. In Pennsylvania, competency is a threshold legal issue, to be decided by the trial court.

*Commonwealth v. Hutchinson*, 611 Pa. 280, 302-03, 25 A.3d 277, 289-90 (2011) (internal citations and quotation marks omitted).

Instantly, the court provided the following explanation for its competency determination:

Here, [Child] answered most of the questions he was asked nonverbally by shaking or nodding his head. [Child] repeatedly indicated that he did not know and/or did not remember what he was called to testify about. [Child] was suggestible to leading questions, repeating the phrasing of the question back to the [court] verbatim.

* * *

At times [Child] started nodding only to shake his head (and vice versa). For example, the following exchange occurred between [Father's counsel] and [Child].

[COUNSEL]: [Child], do you know where you are?

[THE COURT]: Indicating for the record, [Child] is shaking his head, "No."

[COUNSEL]: Do you know if you're in a courtroom or—do you know that?

[THE COURT]: [Child] is shaking his—he is nodding, "Yes."

- 7 -

[Father's counsel] further questioned [Child]:

> [COUNSEL]: All right. Do you have any idea why you're here in this courtroom? No?
>
> [THE COURT]: Indicating for the record, [Child is] nodding his—shaking his head, "No."
>
> [COUNSEL]: And no one has told you why?
>
> [CHILD]: No.
>
> [COUNSEL]: No? Okay.

> Although [Child] had the ability to understand the questions and frame somewhat appropriate answers, [Child] presented as unsure and susceptible to suggestion. In combination with his hesitance and uncertainly, [Child's] suggestibility was indicative that he did not have the maturity to answer questions accurately and truthfully. [Child] was unable to establish a consciousness of the duty to speak the truth, as the judge observed that he was not meaningfully aware that he was in a courtroom and he could not answer questions intelligently. This was immediately apparent when [Father's] attorney asked his first two questions when attempting to establish witness competency. Although the child first testified that he didn't know where he was, when [Father's] attorney asked if he was in a courtroom, the child nodded his head—suggesting he would agree to leading questions. [Child] did not know what he was called to testify about or why he was in court. [Child] stated that he could not remember why he was in court, even though he had been told why he would be there. Combined with his age and immaturity, [Child's] lack of understanding about the fact that he was at trial, that he was being called to testify, and the significance of telling the truth in court demonstrated that [Child] was not a competent witness.

(Trial Court Opinion at 11-13) (internal record citations omitted).

Our review of the record supports the court's analysis. The court

properly considered Child's capacity to perceive the nature of the events about which he was called to testify. Based upon Child's responses, the court determined that Child's hesitance, uncertainty, and suggestibility indicated that Child lacked the maturity to answer questions accurately and truthfully. **See Hutchinson, supra**. On this record, we cannot say that the court abused its discretion in finding Child incompetent to testify. **See Buchhalter, supra**. Accordingly, Father is not entitled to relief on his first claim.

In his second issue, Father emphasizes his own testimony from the PFA hearing, where he testified that Child reported physical abuse perpetrated by Mother. In addition to this testimony, Father reiterates that he offered text messages that confirmed Child's complaints about abuse. Father baldly asserts that the court did not give enough weight to his evidence. On this basis, Father concludes that the court abused its discretion by dismissing the PFA petition.[2] We disagree.

"Assessing the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact

---

[2] In the argument section for his second issue, Father also claims that this Court "must vacate the orders issued by the trial court because the court modified the shared legal custody provision of the custody order while at the same time stated that it was not making a decision on custody modification." (Father's Brief at 19). Nevertheless, Father did not include this claim in his Rule 1925(b) statement. (**See** Rule 1925(b) Statement, filed 4/6/23, at 1-2). Therefore, this argument is waived. **See Kaur v. Singh**, 259 A.3d 505, 511 (Pa.Super. 2021) (reiterating that failure to raise specific challenge in concise statement of errors complained of on appeal results in waiver).

finder." **S.G. v. R.G.**, 233 A.3d 903, 907 (Pa.Super. 2020) (quoting **S.W. v. S.F.**, 196 A.3d 224, 230 (Pa.Super. 2018)). "In reviewing the validity of a PFA order, this Court must… defer to the [trial] court's determination of the credibility of witnesses at the hearing." **C.H.L. v. W.D.L.**, 214 A.3d 1272, 1276-77 (Pa.Super. 2019).

Instantly, Mother unambiguously denied hitting Child on November 6, 2022. (**See** N.T. PFA Hearing at 60). Mother also denied striking Child with a brush on the subsequent occasion mentioned by Father. (**Id.** at 61). Mother's testimony was corroborated by M.A.-R., who denied seeing any conduct by Mother that threatened Child's safety.[3] (**Id.** at 73-74). The trial court was free to credit Mother and M.A.-R.'s testimony. **See S.G., supra**. Because the record supports the court's credibility determinations, we decline Father's invitation to reweigh the testimony in his favor. **See C.H.L., supra**. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/28/2023

---

[3] Prior to her testimony, the court questioned M.A.-R. and deemed her competent. (**See** N.T. PFA Hearing at 69-72).